## Davis Coal Company v. Polland.

[No. 19,644. Filed January 15, 1902. Rehearing denied May 23, 1902.]

Master and Servant.—*Statutory Duty and Liability.*—*Waiver by Employe.*—A contract of employment by which an employe waives in advance his right of having, and relieves his employer of the duty of providing, specific safeguards required by statute, is unenforceable. *pp. 615–617.*

Same.—*Failure to Provide Statutory Safeguards.*—*Personal Injury.*—*Complaint.*—In an action by a mine employe for personal injuries occasioned by the failure of the mine operator to provide certain statutory safeguards it is not necessary to allege in the complaint that the plaintiff was ignorant of such failure on the part of the defendant, or that he did not assume the risks resulting in his injury. *pp. 613–618.*

Same.—*Damages for Violation of Statute.*—*Penalty.*—The right of action for damages for injuries caused by the violation of a statute is in no way affected by a provision of such statute imposing a penalty for its violation. *p. 616.*

Constitutional Law.—*Statutory Safeguards for Miners Not Class Legislation.*—A statute providing that mine operators shall furnish certain safeguards for employes working in mines, is not class legislation, since it applies alike to all persons in like circumstances. *p. 617.*

158   607
159   180
f159  665
159   667

158   607
161   256
161   517
161   681

158   607
e163  138
158   607
164   151
164   421

158   607
f166  298
166   299
166   312
f168   43

158   607
f169   11
169   250
e169  252
f169  253
169   255
169   327
f169  461
f170  629
f170  630

Davis Coal Co. *v.* Polland.

NEGLIGENCE.—*Injury of Mine Employe.*—*Contributory Negligence.*—*Complaint.*—Where, in an action by a miner for damages resulting from the falling of a mine roof, it appeared from the complaint that plaintiff was an experienced miner who knew that defendant had failed to provide props as provided by statute, and with this knowledge continued his work till injured, but that there was nothing in the appearance of the roof to indicate immediate danger; that he was unable to find defects by the usual tests; and that he could and would have propped the roof if the necessary timbers had been supplied, the specific averments do not overcome the general allegation of freedom from fault.  *pp. 618–620.*

MASTER AND SERVANT.—*Coal Mining.*—*Violation of Statutory Duty.*—*Special Findings.*—In an action by a mine employe for personal injuries occasioned by the failure of the mine operator to provide certain statutory safeguards, there was a general verdict for plaintiff, and special findings returned, showing that plaintiff was an experienced miner; that slate from the roof of the mine fell upon him while he was working at the face of a coal vein; that slate is liable to fall at any time without warning; that the falling of slate, if not propped, is an inherent danger in coal mining; that appellee had knowledge of the danger; that it is not impossible nor difficult to tell whether slate is in the roof of a mine before it suddenly falls; that plaintiff examined the slate that fell on him a few minutes before it fell, and believed it was safe; that defendant's bank boss could not have made any other test than plaintiff made; that the driver delivered props three days before the accident; and that slate can be safely propped. *Held,* that the finding in the general verdict that defendant failed to perform its statutory duty is not impeached by the special findings.  *pp. 620, 621.*

From Clay Circuit Court;   *S. M. McGregor,* Judge.

Action by Samuel Polland against the D. H. Davis Coal Company.   From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*G. A. Knight,* for appellant.
*S. D. Coffey* and *A. W. Knight,* for appellee.

BAKER, J.—This cause has been transferred here because the Appellate Court was equally divided on the questions involved.  *Davis Coal Co. v. Polland,* 27 Ind. App. 697.

Appellee had judgment against appellant for damages for personal injuries.   The assignments are that the court erred

in overruling appellant's demurrer to the complaint, motion for judgment on the jury's answers to interrogatories notwithstanding the general verdict, and motion for a new trial.

· I.  The complaint is as follows: "Samuel Polland, plaintiff, complains of D. H. Davis Coal Company, defendant, and says that on the 30th day of November, 1897, the said defendant was and for many years prior thereto had been a duly organized corporation, organized under the laws of the State of Indiana for mining purposes; that the said defendant then was and for a long time prior thereto had been engaged in the business of mining coal in Clay county, Indiana, by means of a shaft sunk from the surface of the earth to the bed of said coal, and by means of driving entries through the same, from which said entries rooms were turned; that on said day said defendant had in its employ, engaged in mining coal in said mine, more than ten men, to wit, 100 men; that on said day the plaintiff then was in the employ of the said defendant as a coal miner, engaged in mining coal in said mine, in a room on an entry running in a westerly direction from the bottom of said shaft; that by reason of the fact that the plaintiff was so engaged in the employ of the defendant as its servant in said mine it became and was the duty of the defendant to use reasonable care to furnish him a safe place in which to perform his said work, and to protect him therein, and to that end it became and was the duty of the defendant to keep constantly on hand at its said mine, a sufficient supply of timbers, and to deliver at said working place of the plaintiff all props, caps, and timbers of proper length, when needed and required by the plaintiff, so that he might be at all times able to secure properly his said room from caving in; that it was the further duty of the said defendant, by its bank boss, to visit and examine each and every working place in said mine, including the room in which this plaintiff was at work at least

every alternate day, and to examine and see that each and every working place in said mine, including the room in which this plaintiff so worked, was properly secured by props or timbers, and that safety was in all respects assured, and to see that a sufficient supply of props, caps and timbers was always on hand at this plaintiff's said room or working place in order that the same might be propped and made secure and safe; and the plaintiff alleges that the said defendant did not perform its said duty in that behalf, but wholly failed and neglected so to do in this: That it did not keep constantly on hand a sufficient supply of timbers of proper length when needed and required by the plaintiff so that he might be at all times able to secure properly his said room and working place from caving in, but, on the contrary, it negligently and carelessly refused and neglected to deliver the necessary props, caps, and timbers of proper length to the said plaintiff at his said working place, although often requested by the plaintiff so to do; that said defendant negligently and carelessly failed, by its bank boss, to visit and examine the said working place and room of the plaintiff at least every alternate day while the plaintiff was at work therein, and see that the same was properly secured by props or timbers, and that safety was in all respects assured, and see that a sufficient supply of props, caps, and timbers was always on hand at the said working place and room of this said plaintiff, but, on the contrary, did not visit said working place more than once a week and negligently and carelessly permitted the same to remain without props, caps, and timbers for two days prior to the injury hereinafter complained of, so that by reason of the negligence of the said defendant as herein stated the plaintiff was unable to prop and make secure the said room and working place in which he was performing his said work; that by reason of the said negligence of the defendant, and by reason of the want of timbers, caps, and props of proper length to secure the same, the roof of

the said room in which the plaintiff was at work became and was weak and dangerous, which was well known by the defendant, or might have been known by it had it used reasonable diligence to ascertain the same; that by reason of the weak and unsafe condition of said room, caused as aforesaid from inability of the plaintiff to prop and secure the same for want of props, caps and timbers of proper length as aforesaid, the said roof of said room in which plaintiff was performing his work in said mine on the 30th day of November, 1897, suddenly gave way, caved in, and fell upon the plaintiff, thereby crushing and maiming the flesh and bones in his right leg below the knee, without any fault or negligence on his part; that by reason of said injury the plaintiff became sick, sore, and lame, and was confined to his bed for a long space of time, to wit, two months, and suffered and endured great bodily pain and mental anxiety and suffering, and has been permanently injured, and lost a large amount of time, to wit, four months, of the value of $300, and will never be able to earn money by his labor as he was prior to said injury; that said injury occurred wholly by the fault and negligence of the said defendant, while the plaintiff was in the exercise of due care and caution; that if the said defendant had performed its duty, and visited said working place of the plaintiff by its bank boss, and had seen that safety was in all respects assured, and seen that timbers, props, and caps of proper length were always on hand, said injury would not have occurred; that had the said defendant furnished this plaintiff with timbers, caps, and props, as was its duty, he could and would have propped and secured the roof of said room and working place so that the same would not have caved in, fallen upon, and crushed his said leg; that at and prior to the time of said injury there was nothing in the appearance of said roof to indicate immediate danger, and he was unable to find any defect therein by the usual and ordinary tests, but he says the same could and

would have been made by him perfectly secure but for the negligence of the defendant as herein alleged; that by reason of the injuries herein alleged the plaintiff has been damaged in the sum of $3,000. Wherefore he demands judgment for $3,000, and all other proper relief."

The parts of the statutes on mines that are pertinent provide: "Miners' bosses shall visit their miners in their working places at least once every day where any number not less than ten nor more than fifty miners are employed, and as often as once every two days when more than fifty miners are employed." §7447 Burns 1901, §5472a Horner 1901. "The owner, operator, agent or lessee of any coal mine in this State shall keep a sufficient supply of timber at the mine, and the owner, operator, agent or lessee shall deliver all props, caps and timbers (of proper length) to the rooms of the workmen when needed and required, so that the workmen may at all times be able to secure properly the workings from caving in." §7466 Burns 1901, §5480g Horner 1901. "The mining boss shall visit and examine every working place in the mine at least every alternate day while the miners of such place are or should be at work, and shall examine and see that each and every working place is properly secured by props and timber and that safety of the mine is assured. He shall see that a sufficient supply of props and timber are always on hand at the miners' working places." §7472 Burns 1901, §5480m Horner 1901. "For any injury to person or property occasioned by any violation of this act, or any wilful failure to comply with any of its provisions, a right of action against the owner, operator, agent or lessee shall accrue to the party injured for the direct injury sustained thereby". §7473 Burns 1901, §5480n Horner 1901.

Two questions arise on the complaint: Assumption of risk and contributory negligence.

(1)  The complaint does not negative the employe's knowledge of the employer's negligent failure to perform the duties imposed by statute, and of the dangers resulting therefrom.

If the cause of action in this case were based upon the employer's neglect to perform a common law duty, or if there were no valid distinction between neglect of a common law duty and neglect of a specific statutory duty, the complaint would be fatally defective. *Ames* v. *Lake Shore, etc., R. Co.*, 135 Ind. 363; *Louisville, etc., R. Co.* v. *Kemper*, 147 Ind. 561; *Whitcomb* v. *Standard Oil Co.*, 153 Ind. 513.

By the common law an employer is required to exercise that degree of care in providing his employe a safe working place and tools and appliances which a reasonably prudent person would exercise under like circumstances.  The rule is general.  There is no fixed *quantum* of care that must be exercised invariably in all cases.  In each case the *quantum* of care required by the common law rule is dependent largely upon the circumstances of that case and to quite an extent upon what the jury and court may think a reasonably prudent person would have done under those circumstances.  The manner of constructing the working place, and the selection of tools and appliances, and the keeping of them in proper repair, therefore, are left to the employer's judgment and discretion without limitation except this: that he must do what a reasonably prudent person would do in his place. Now, if the employer does what he thinks comes up to this general standard, and if the employe examines the place and appliances, adds his judgment to that of the employer, and agrees as one of the terms of his contract of employment that the employer has done all that a reasonably prudent person should do under the circumstances, and that he will notify the employer of after-occurring defects, the employe expressly assumes the risks that are known to him or might have become known by the exercise of ordinary care, of which he has made no

complaint to the employer. So, also, the conditions being the same except that the assumption of risk is not expressly included in the contract of employment, the law reads into the contract, from the employe's knowledge and silence, his agreement to assume all known and obvious risks. Whether express or implied, assumption of risk is a matter of contract. In either case the employe whose injury is due to a known or an obvious defect in place or appliances, which he has suffered to continue without objection, cannot hold the employer liable,—not because the employer was not in fact negligent, for he may not have exercised ordinary care; not because the employe was contributorily negligent, for at the time and under the circumstances of the accident he may have used due care to avoid injury; but because the employe has agreed for a sufficient consideration to absolve the employer, and to assume for himself the risk of such injury.

If a statute is a mere affirmation of the common law duty of the employer with respect to providing safe working places and tools, the rule as to assumption of risk remains in force. The standard of care continues to be the conduct of the reasonably prudent person under like circumstances; and the means of measuring up to it may still be the subject for the joint judgment and agreement of the employer and the employe.

If, however, the statute, as in this case, sets up a definite standard, and requires specific measures to be taken by the employer in providing safe working places and appliances, other considerations come into view. The very fact of such legislation indicates that the lawmakers believed that the operation of the common law rules did not afford the employe sufficient protection; that, under the development of the modern industrial system, tending to centralization of capital and impersonal management, the employe did not stand upon a footing of equality with the employer in contracting for his safety; and that the necessity of earning the

daily wage frequently constrained the employe to put up with defective place and tools, without complaint, by reason of his fear of the consequences of complaining. From these conditions grew the necessity, or at least the propriety, of requiring certain specific measures to be taken for the protection of employes. The manner of constructing and maintaining the working places and appliances so as to measure up to the general standard of the reasonably prudent person was no longer left to the judgment of the employer. A definite standard was fixed by the legislature. It is the duty of the employer to use the very means named in the statute. He is not at liberty to adopt others, though in his opinion they are more efficacious than those prescribed by the lawmakers. How, then, can there be any lawful basis for an agreement, implied or express, that the employer shall violate the law, and that the employe shall be remediless?

The doctrine of assumed risk, in its essential nature, constitutes a defense. The employe brings his action for damages for personal injury. It is based upon the employer's negligent failure to discharge a duty owing to the employe. Duties and rights are correlative,—what is the duty of the employer to do for his employe, is the right of the employe to require of his employer. The employer says, "You have no right of action against me because you contracted with me long before the accident happened that you would assume the very risk you are now complaining of." Such a contract, when the duty of the employer and the right of the employe are measured by the indefinite standard of care that a reasonably prudent person would have exercised under like circumstances, is enforceable. And so the heart of the present case is this: Is a contract enforceable by which the employe waives in advance his right of having, and relieves his employer of the duty of providing, the specific safeguards required by the statute?

The statute does not, in terms, forbid the making of such a contract. And it is said that the court should not hold it

to be impliedly forbidden, because, for one thing, the statute provides a punishment by fine for the employer's violations, and a second punishment for the same offense is not permissible. The action of the employe is solely to recover compensation for actual damages. The payment of compensative damages is not punishment. The right of the State to recover a penalty, and the right of an aggrieved party to recover compensation, are not inconsistent. Indeed, the right to the penalty (in the form of punitive damages) as well as to compensation might have been given to the aggrieved party,—as in the telegraph cases. *Western Union Tel. Co.* v. *Henley,* 157 Ind. 90. Since the two rights (or sanctions for enforcing observance) are independent of each other, the presence of the penal provision in the statute makes neither for nor against the right to compensation free from the defense of assumed risk. The case stands as if the employer's failure to comply with the requirements of the act had not been made a misdemeanor.

It is true, as propounded by counsel, that the State can not compel an injured employe to bring an action for damages, nor prevent his settling or dismissing it if begun. But the legislature may well have believed that the natural desire of employes to recover compensation for injuries would lead employers to fulfill the law. At any rate, those employers who are brought into court to defend have nothing to complain of on this score. The employe's right to control his lawsuit, however, does not touch the question of his right to bind himself in advance to absolve the employer from the performance of specific statutory duties.

Freedom of contract should not be lightly interfered with. As a general rule, the right of contracting as one sees fit stands untrammeled. But the State has power to restrict this right in the interest of public health, morals, and the like. When, in the present case, it is pointed out that the legislature has failed in terms to deny the employe's right to assume the risks from his employer's disregard of the stat-

Davis Coal Co. v. Polland.

ute, the question is not ended. If the legislature has clearly
expressed the public policy of the State on a matter within
its right to speak upon authoritatively, and if that public
policy would be subverted by allowing the em-
ploye to waive in advance his statutory protection,
the contract is void as unmistakably as if the statute in
direct words forbade the making of it. If mines and fac-
tories and stores and railroads were to stand vacant, were
not to be operated by citizens in whose lives and limbs the
State has an interest, it is inconceivable that the legislature
would have spoken as it has, even if it had authority to do
so. To promote safety to life and limb, as indisputably as
to advance public health, education and morals, to prohibit
usury, to provide for exemption and stay of execution, the
legislature has the right to act.

The statute in question is not class legislation. Employ-
ments differ in degree of hazard. Each has its separate
dangers, which must be guarded against in the appropriate
way. To classify legislation by distinctions that naturally
inhere in the subject-matter is not to indulge in class legis-
lation. A law is general and uniform if all persons in the
same circumstances are treated alike.

The purpose of this statute to promote the safety of min-
ers being clear, and the right of the legislature to pass it
being unquestionable, the court should not declare it a dead
letter. If the employer may avail himself of the defense
that the employe agreed in advance that the statute should
be disregarded, the court would be measuring the rights of
the persons whom the lawmakers intended to protect by the
common law standard of the reasonably prudent person, and
not by the definite standard set up by the legislature. This
would be practically a judicial repeal of the act. It is no
hardship to the employer to disallow him a defense based on
an agreement that he should violate a specific statutory
duty. His sure protection lies in obedience to the law. The

risks that still inhere in the business after this is done may be assumed by the employe.

This is not the only instance in which the court has found a legislative limitation upon the right of contract, though not declared in terms. A contract by which a debtor undertakes in advance of judgment not to take a stay of execution or to claim exemption is held to be void, although the statute does not expressly forbid the making of such a contract. *Maloney* v. *Newton,* 85 Ind. 565, 44 Am. Rep. 46. The lawmakers, in effect, said that it is contrary to public policy to allow a debtor to be stripped to nakedness. The State in many ways is interested in the debtor's being a self-respecting and self-sustaining citizen. Therefore the debtor is not permitted to barter away the State's interest in him. And though, after judgment, he is not compelled to take a stay or claim his exemption, the legislature deemed that the public policy would be amply enforced by his privilege to do so. Other examples of this kind might be cited.

The conclusion that the employer may not put upon the employe the risks that arise from the employer's disregard of specific statutory requirements is supported by the following authorities: *Narramore* v. *Cleveland, etc., R. Co.,* 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68; *Durant* v. *Lexington Coal Mining Co.,* 97 Mo. 62, 10 S. W. 484; *Greenlee* v. *Southern R. Co.,* 122 N. C. 977, 30 S. E. 115, 41 L. R. A. 399, 65 Am. St. 734; *Baddeley* v. *Earl Granville* (1887), L. R. 19 Q. B. D. 423, 17 Eng. Rul. Cas. 212; *Groves* v. *Wimborne* (1898), L. R. 2 Q. B. D. 402; *Curran* v. *Grand Trunk R. Co.,* 25 Ont. App. 407.

(2) As to contributory negligence. The complaint alleges that appellee used due care and caution to avoid injury. This is enough, unless the specific averments show this general allegation to be untrue. It sufficiently appears that appellee was an experienced miner, knew that appellant had failed to provide supports as required by statute, and with this knowledge continued at his work until injured.

Appellant claims that this constituted such negligence as to preclude a recovery. Counsel are confusing the doctrines of contributory negligence and assumption of risk. Assumption of risk is a matter of contract. Contributory negligence is a question of conduct. If appellee were to be defeated by the rule of assumed risk, it would be because he agreed, long before the accident happened, that he would assume the very risk from which his injury arose. If appellee were to be defeated by the rule of contributory negligence, it would be because his conduct, at the time of the accident and under all of the attendant circumstances, fell short of ordinary care. If the one circumstance of the employe's knowledge of the employer's failure to provide the statutory safeguards were held, as a matter of law, always to overcome the other circumstances characterizing the employe's conduct at the time of the accident, assumption of risk would be successfully masquerading in the guise of contributory negligence. If assumption of risk is the issue, knowledge of defective conditions and acquiescence therein are fatal. If contributory negligence is the issue, knowledge of defective conditions and acquiescence therein may be fatal, may be not; depending upon whether a person of ordinary prudence, under all the circumstances, would have done what the injured person did. If the risk is so great and immediately threatening that a person of ordinary prudence, under all the circumstances, would not take it, contributory negligence is established. If the risk is not so great and immediately threatening but that a person of ordinary prudence, under all the circumstances, would take it, contributory negligence is not established. Appellee alleges that there was nothing in the appearance of the mine's roof to indicate immediate danger, that he was unable to find any defect therein by the usual tests, and that he could and would have propped up the slate securely if appellant had not been derelict in supplying timbers. The

specific averments do not overcome the general allegation of freedom from fault.

II. The answers to interrogatories upon which appellant claims judgment notwithstanding the general verdict show that appellee was an experienced miner; that slate from the roof fell upon him while he was working at the face of the coal vein; that slate is liable to fall at any time suddenly and without warning; that the falling of slate, if not propped, is an inherent danger in coal mining; that appellee had knowledge of such danger; that he knew that the roof of the room in which he was working was composed largely of slate; that he knew that large quantities of slate had been falling almost daily; that it is not impossible nor difficult to tell whether slate is in the roof of a mine before it suddenly falls; that appellee examined the slate that fell on him a few minutes before it fell and believed it was safe; that appellant's bank boss could not have made any other test than appellee made; that the driver delivered props at appellee's room on Saturday preceding the accident on Tuesday; and that slate can be safely propped.

The questions of assumed risk and of contributory negligence are again presented in argument.

Appellee did not assume the risks arising from appellant's disregard of its statutory duties. The answers do not prove that these duties were performed. The props delivered on Saturday may have all been used as the work progressed into the vein of coal. The finding in the general verdict that appellant failed to perform its statutory duties stands unimpeached.

Do the answers override the general verdict on the question of contributory negligence? Large quantities of slate fell almost daily. But the evidence may have shown that some days none fell; that ordinarily a test would show what part of the slate would fall and what would hold; and that the chances were largely in favor of safety, if tests were made. Appellee made the best test possible, and found the

slate apparently solid and secure. It could have been propped so that it would not have fallen. Appellee may have ordered props, and may have been expecting them to be delivered at any moment. No discoverable danger was immediately threatening. Under these circumstances he was not compelled to give up his work on pain of being held negligent.

III. On the evidence and instructions the same questions again arise. The evidence amply sustains the verdict, and the instructions are in harmony with the law as hereinabove declared.

Judgment affirmed.