## L. T. DICKASON COAL COMPANY *v.* PEACH.

[No. 4,496.   Filed December 8, 1903.]

MASTER AND SERVANT.—*Mines and Minerals.—Injury of Miner.—Contributory Negligence.*—In an action for injury to a coal miner, the evidence showed that plaintiff, at his request, was sent to remove slate that had fallen upon the tracks; that in removing the slate he pushed down a prop, without examining the roof of the mine, and slate fell upon him, causing his injury.  He was an experienced miner, and wore a cap with a miner's lamp on it, and could see the roof of the mine by the reflection of the light. *Held,* that plaintiff was guilty of contributory negligence.

From Sullivan Circuit Court; *O. B. Harris,* Judge.

Action by William Peach against the L. T. Dickason Coal Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*John S. Bays* and *L. F. Bays,* for appellant.
*John A. Riddle* and *Seymour Riddle,* for appellee.

COMSTOCK, J.—Appellee brought this action under §7472 Burns 1901, §5480m Horner 1901, against appellant, a corporation duly organized under the statute of the State of Indiana, engaged in mining and shipping coal from its plant in Greene county, in this State, to recover damages for personal injuries alleged to have been suffered by reason of the negligence of appellant.

The cause was put at issue by general denial. A trial resulted in a verdict and judgment in favor of appellee for $700. With the verdict the jury returned answers to interrogatories.

The assignment of errors questions the sufficiency of the complaint, the action of the court in overruling appellant's motion for judgment on the answers to the interrogatories notwithstanding the general verdict, and the overruling of appellant's motion for a new trial.

The complaint is lengthy, but may be fairly summarized as follows: Appellant was the owner and operator of a coal mine in which there was a main entry running west from the bottom of appellant's coal shaft some 300 or 400 yards; that there was also another main entry running east from the bottom of the shaft several hundred feet. Two entries were driven from these east and west main entries as follows: One to the south off the main east entry, and one to the south from the main west entry running parallel. Some distance from where these two parallel south entries left the east and west main entries, two working rooms had been turned off opposite each other,—one running toward the west and the other running toward the east. Appellant mined out the coal from the two rooms known

as room No. 5 off the first south entry off the east and
the first south entry off the west until they came together
and made a continuous opening from the south entry to
the other; that in order to cause the ends of the iron tracks
or rails running into each of the said rooms (and used as
car tracks) to meet so the electric mining machines could
run over same from one of these south entries to the other,
it was necessary for the appellant to remove some of the
props and timbers which supported the slate and roof of
said rooms, and that appellant, after having necessarily
removed said props, carelessly and negligently failed and
neglected to replace the same, and make said rooms a safe
place for its employes to work.    Certain railroad tracks
and switches were constructed upon the surface of said mine
and immediately over the place where appellee was com-
pelled to work, and appellant's machinery was also imme-
diately over said place; that the weight and unusual power
of the railroad locomotives, cars, and machinery were so
great that they "jarred, vibrated, shocked, disturbed, loos-
ened, and disintegrated the earth, slate, and roof over and
above the said rooms above mentioned, making and render-
ing the earth, slate, and roof above said rooms insecure, un-
safe, and dangerous, and making same liable to give way,
fall, and cave in at any time."    It is further alleged that,
after appellant had rendered the room No. 5 in an unsafe
condition by reason of the above methods, appellee was sent
in room No. 5 to work before it had replaced the props
and timbers it had removed from supporting the roof, and
which had been taken out in order to enable the appellant
to construct its track in the rooms as herein indicated.    It
is also claimed that appellee had been taken out of his reg-
ular working place and put in room No. 5.

We need only refer to the recognized rule that every
presumption is indulged in favor of the general verdict,
and that special findings prevail over the general verdict
only when there is an irreconcilable conflict between the

two. In seeking to avoid this conflict, courts may take the special findings and add to them other facts that might have been proved under the issues. *Rhodius* v. *Johnson,* 24 Ind. App. 401, and cases there cited. Applying this rule, the irreconcilable conflict claimed to exist may be avoided.

The first, second, and third reasons for a new trial are, respectively, that the verdict is contrary to law, contrary to the evidence, and is not sustained by sufficient evidence.

The following facts are shown by the evidence: On the 4th day of October, 1901, William Peach was working in the mine of the L. T. Dickason Coal Company, at Linton, Indiana, and had been working there since the June before. He was fifty-one years old, and for over forty years he had worked as a coal miner in different coal mines. He was a practical coal miner, and thoroughly understood the business of mining coal in all of its departments. During the time he was working for the appellant coal company he had worked at either jerry work or machine work. On Friday, October 4, while working his machine, the machine became disabled, and Peach was not able to mine coal with it. He did not work on Saturday, but on Sunday evening there was some cleaning up to do in room No. 5 on the first south entry off the east entry of the coal mine. Peach wanted work, and was given the job as assisting Charles Board, William Stevenson, and R. T. Jones. The evidence clearly discloses that William Peach was not taken away from his regular work and sent elsewhere, but that he desired to do the work he was engaged in at the time he was hurt. The work was simple, and consisted in the act of shoveling some fallen slate from off the track in room No. 5, and also taking from the track in said room No. 5 a large piece of slate that had fallen thereon. In removing the slate from the track they edged it up on the end and rested it against one of the props. They then ascertained that the mining machine could not pass over

the track on the trucks that carried it, because the large piece of slate was too near the track. There were two ways in which the piece of slate could be removed from its then position, viz., one by breaking it up, and another by knocking out the prop so that they could get it by the obstructing timber. The latter method seems to have been chosen, and the prop was knocked out, and the slate moved past where the prop was, and out of the way of the track. Very soon after this prop was knocked out, the slate fell where the prop had been. It is also shown by the evidence that the mine boss had visited the room where the appellee was injured on the 5th day of October—the day preceding the day in which the injury happened. That after his visit to the room some shots had been fired to shoot down the coal, and these shots had caused some of the slate to fall from the roof on the track. These parties were engaged in cleaning up this fallen slate at the time Peach was injured. At the time they went into the room to do this work, they made no examination whatever of the roof or its condition, but sat around awhile, pushed down a prop, moved away some slate, and shoveled some slate off the track, before Peach was hurt; that it is always proper and necessary for a person going into a new working place in a coal mine to examine the roof to ascertain whether or not there is any overhanging loose slate before commencing to work. The evidence also shows that the running of the train over the surface and the operation of the machinery had nothing to do with the falling of the slate at any time, and that it was not calculated to cause the slate to come "loosened, jarred, vibrated, shaken, disturbed and disintegrated."

Appellee testified that at the time of the accident he was working as a jerry man; that a part of his duty as jerry man was to move the slate off the track; that it was customary for jerry men at work in a mine to examine the roof, and see if it was safe. He wore a cap with a

miner's lamp on it, and he could see the roof by the re-
flection of the light. The roof of the room was so low
that he could touch it with his hand. After the prop had
fallen, he did not attempt to replace it. He made no ex-
amination of the roof. It affirmatively appears from the
evidence that appellee used no care whatever to avoid in-
jury. He was clearly guilty of contributory negligence.

Counsel for appellant rely strongly upon *Davis Coal Co.
v. Polland,* 158 Ind. 607, in which the assumption of risk,
under the statute, and contributory negligence are discussed
and distinguished. The foregoing opinion is founded upon
the facts exhibited by the record, and is not in conflict
with *Davis Coal Co.* v. *Polland, supra.*

It follows that the evidence is not sufficient to sustain
the verdict. It is not necessary to consider other alleged
errors.

Judgment reversed, with instruction to sustain appel-
lant's motion for a new trial.