## COLLINS COAL COMPANY *v.* DE PUGH.

[No. 6,715.    Filed May 13, 1909.]

1.    PLEADING.— *Complaint.— Mines.— Failure to Furnish Props.— Notice.*—A complaint alleging that the defendant coal mining company negligently failed to deliver to the plaintiff miner the necessary props for his room, that plaintiff requested the same by posting his requisition upon the blackboard and by sending notice orally through the driver, to plaintiff's injury, is sufficient, an allegation that it was customary to notify defendant by sending word by the driver being unnecessary.    p. 650.

2.    MINES.—*Coal.—Props.—Notice of Need of.*—Where a coal mine operator actually receives notice of a miner's need of props for his room, such operator is liable for neglect in furnishing same, the means used in conveying the notice being immaterial.    p. 651.

3.    TRIAL.— *Variance.— Pleading.— Evidence.— Custom.— Mines.— Props.—Notice.*—Where a complaint alleges that the plaintiff coal miner notified the defendant operator by posting his requisition for props on the blackboard, and by sending word by the driver of such need, proof that notice by the driver was the customary way of giving notice, constitutes no variance.    p. 652.

4.    MINES.—*Falling Slate.—Place of Injury.—Evidence.*—Evidence by a coal miner that he had been drilling a hole and as he started to get up to go back down the entry the slate fell upon him, sufficiently shows that he was in a servant's proper place when injured.    p. 652.

5.    MINES.—*Failure to Furnish Props.—Evidence.*—Evidence showing that a coal miner notified his company of his need of props on Saturday and again on Monday, that the boss visited his place but once during all the time he worked in the subentry, and did not then inspect the roof, that the use of props would have made the roof safe, that such miner inspected the roof but discovered no immediate danger, and that while at work the slate fell upon him, to his injury, supports a verdict for such miner.    p. 652.

From Putnam Circuit Court; *John M. Rawley,* Judge.

Action by John De Pugh against the Collins Coal Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*George W. Faris, D. V. Miller, S. A. Hays* and *George M. Faris,* for appellant.

*George A. Knight* and *A. W. Knight,* for appellee.

COMSTOCK, P. J.—Appellee brought this action against the appellant to recover damages for certain injuries alleged to have been sustained by him while in the employ of the appellant as a coal miner, and which injuries are alleged to have been occasioned by the negligence of appellant in failing to comply with certain provisions of the mining act of 1905 (Acts 1905, p. 65, §§12, 15, §§8580, 8585 Burns 1908). The cause was put at issue by general denial, and a trial resulted in a verdict and judgment in favor of appellee for $4,000.

The errors assigned question the sufficiency of the complaint and the action of the court in overruling appellant's motion for a new trial.

The acts of negligence set forth in the complaint are: (1) The appellant did not keep constantly on hand at its mine a sufficient supply of timbers of proper length; (2) it failed and neglected to deliver to appellee at his working place props, caps and timbers of proper length when needed and required by him; (3) appellant, through its bank boss, failed to visit and examine appellee's working place at least every alternate day, while he was at work, and see that the same was properly secured by props or timbers, and that safety was in all respect assured, and that a sufficient supply of timbers was on hand at appellee's working place; (4) appellant, through its bank boss, failed and neglected to see that all loose coal, slate and rock overhead in the entry where appellee was carrying on his work was secured or taken down. The sections of the mining act alleged to have been violated are as follows: "The mine boss shall visit and

examine every working place in the mine, at least every alternate day while the miners of such places are, or should be, at work, and shall examine and see that each and every working place is properly secured by timbering and that the safety of the mine is assured. He shall see that a sufficient supply of timbers is on hand at the miner's working place. He shall also see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work, are taken· down or carefully secured." Acts 1905, p. 65, §12, §8580 Burns 1908. "The operator of any mine shall keep a sufficient supply of timber at the mine, and shall deliver all props, caps and timbers (of proper lengths) to the rooms of all the workmen, when needed and required, so the employes may, at all times, be able to properly secure the workings from caving in. Every operator operating mines in this State shall place a blackboard near the mine entrance sufficiently large, stating thereon in figures the lengths of all timber in use in said mine. The miners shall register thereon, when needing timbers for securing their working places, their respective numbers, under the figures indicating the proper lengths of timber required." Acts 1905, p. 65, §15, §8585 Burns 1908.

Objections are made to the complaint, that it is defective in failing to allege each of the following facts: That appellant had a blackboard at the top of its mine, near the entrance, for the purpose of having the miners put thereon their requisitions for props; that appellee placed a requisition for timbers upon the blackboard, under his number, indicating the proper length of timber required; that it was the custom in the mine to order props of the driver; that the plaintiff complied with the statute in regard to the ordering of his props or allege anything which relieved him from complying with the statute in this regard. Nor is it alleged that had a sufficient supply of caps, props and timbers of the proper length been constantly kept

on hand to be used when the same was needed and required by plaintiff to make the working place secure, had plaintiff's working place been visited and examined every alternate day by the bank boss, had the working place of plaintiff been secured by props and timbers of the proper length, and had the loose coal, slate and roof overhead in the working place of the plaintiff, where he had to work or travel, been removed, it would in any way diminish the danger without destroying the working place of this plaintiff, or had all of the things required by the statute been done, it would not render the working place of this plaintiff in such a condition as it would be impossible for the appellant to have the coal mined and removed therefrom. These objections ought not to prevail, for the following reasons: The complaint avers that the defendant neglected to deliver the necessary props, etc., although often requested so to do by the plaintiff, not only through the driver in said mine, but also by posting such requisition on the blackboard furnished for that purpose. It was not necessary to allege that it was the custom to order props of the driver. It was only necessary to register on the board the needs of the miner. But whether information of the need of props was made

2. through the driver or by posting on the blackboard would seem to be immaterial, if the information was actually given.

The complaint does aver "that had said defendant provided plaintiff with props and caps of proper length, as was its duty under the law, said plaintiff could and would have propped the roof and sides of said subentry, without in any way interfering with his work there, so that the same could not and would not have caved in, fallen upon and injured plaintiff." In the brief in behalf of appellee our attention is called to the fact that the complaint in question is, with many immaterial changes, an exact copy of the complaint in the case of *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319. The demurrer was properly overruled.

Upon the trial appellee was permitted to prove that it was the custom in the mine to order props through the driver, who would deliver the order to the cager, and the latter, in turn, would communicate the order to the timber man on top.    It is insisted on behalf of appellant that, as the complaint proceeds upon the theory that the accident resulted from the failure of appellant to obey the mining act of 1905, *supra,* and as the statute provided the manner in which props should be obtained, it was error to admit evidence of a custom contrary to the provisions of the statutes.    The complaint avers that notice was given in both ways, and the evidence supports the averments.    It is not claimed that appellant did not have notice.    If error, therefore, it was harmless.

It is claimed that the verdict of the jury is contrary to the evidence; that the complaint proceeds upon the theory that the appellee was injured by the fall of slate from the entry; that the evidence shows that he relies upon this theory; that there is no evidence to show that he was injured at his working place; that when injured he was where he had no right to be.    Plaintiff describes the work in which, and the place where, he was engaged, the entries and subentries, etc., of the mine.    To the following question, "What were you doing at the time you were injured?" he answered, "Well, I had been drilling a hole, and I was going—I was slightly stooped over—and I was going to get up and go back down the entry, and the slate fell on me." Upon this and other evidence the jury were certainly justified in finding that he was where he had the right to be.

As we have not set out the complaint in full, nor given a summary of the evidence, we deem it proper to add that the complaint discloses, and there is evidence to establish the following facts:   Appellant failed to deliver props to appellee's working place, although it was requested so to do on Saturday before the accident and on Monday, the day of the accident.   Appellee on both of said days

posted his requisition for props on the blackboard furnished by the company, and gave orders for props to the driver. During all the period that appellee worked in the subentry the bank boss visited his working place only once, and at no time made an inspection of the roof. If appellee had been provided with props he could have and would have secured his working place from caving in; and the props could have been used without interfering with his work. The roof, at the point where the fall took place, appeared to appellee to be reasonably safe. He sounded it with his pick, and could discover no signs of immediate or imminent danger. He wanted the props to render his place absolutely safe, and could have made it so had appellant timely furnished props. By reason of the failure of appellant to furnish props and examine appellee's working place, through its bank boss, at least every alternate day, appellee received great and permanent injury.

Judgment affirmed.