## MUREN COAL AND ICE COMPANY v. COPELAND.

[No. 7,229. Filed January 11, 1910. Rehearing denied April 6, 1910. Transfer denied June 22, 1910.]

1. MASTER AND SERVANT.—*Coal Mines.*—*Safe Place.*—*Timbers.*— *Failure to Furnish.*—Evidence showing that a coal miner fired a blast in his room cracking the roof thereof, that he called the assistant mine boss's attention thereto, that such boss .advised

him to prop the roof, that he consulted another miner who told him he thought it safe but advised propping, that while removing the loose coal therein the roof fell and killed the miner, and that no props were available at the mine, sustains a verdict in favor of the widow of such miner. p. 233.

2. MASTER AND SERVANT.—*Coal Mines.—Duties of Operators.—Timbers.—Notice.—*It is the continuing duty of an operator of a coal mine to supply timbers for props for the miners, the statutory requirement (§8585 Burns 1908, Acts 1905 p. 65, §15) of blackboard notice of the need of props being only one of the means of notifying the mine boss of the needs of the miners. pp. 234, 237.

3. MASTER AND SERVANT.—*Assumption of Risk.—Coal Mines.—Inspection.—Timbers.—*The failure of a mine operator to supply props for the use of a miner during the progress of his work, is not a risk assumed by the miner. p. 235.

4. MASTER AND SERVANT.—*Contributory Negligence.—Coal Mines.—Dangerous Rooms.—*A coal miner is not guilty of contributory negligence, as a matter of law, in continuing to work in a coal mine where the roof was cracked by a blast, but which was not so threatening that a person of ordinary prudence would not work therein. p. 236.

5. MASTER AND SERVANT.—*Coal Mines.—Props.—Failure to Furnish.—*Where a mine operator does his duty as to mine inspection and knows nothing as to dangers in a room during the progress of the work, his failure to furnish props caused by the miner's failure to register his needs on the mine blackboard, is excusable. p. 237.

From Gibson Circuit Court; *O. M. Welborn*, Judge.

Action by Bertha Copeland against the Murin Ice and Coal Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Affirmed.*

*Richardson & Taylor, Thomas Duncan* and *Thomas M. McDonald,* for appellant.

*J. W. Brumfield* and *Stanley N. Krieg,* for appellee.

RABB, J.—Appellant operates a coal mine in this State. Appellee's decedent was engaged as a coal miner in appellant's service, and, while so engaged, was killed by a large piece of slate or stone that fell from the roof of the mine where said decedent was engaged at work, and this action was brought to recover damages on account of his death, on

the ground that the death was occasioned by the negligence of appellant. The case was put at issue, and a jury trial was had, resulting in a general verdict in favor of appellee. Appellant's motion for a new trial was overruled, and judgment was rendered on the verdict.

The judgment is sought to be reversed on the ground that the evidence is insufficient to sustain the verdict. The negligence charged against appellant, as being the proximate cause of the decedent's death, was the failure of appellant to comply with the provisions of the statute requiring operators of mines in this State to see that a sufficient supply of timber is always on hand at every miner's working place, to enable the miner properly to support the roof of the mine in the place where he is engaged at work.

There are other averments in the complaint, charging a failure on the part of the mining boss to comply with the provisions of the statute requiring him to visit the miner's working place every alternate day, but it does not appear from the allegations of the complaint that such failure of the mining boss to visit the miner's working place had anything to do with the accident resulting in the decedent's death.

It is charged that had appellant performed its duty in the matter of keeping constantly on hand at said miner's working place a supply of timber, the decedent would have used the timber to protect himself from the slate or rock which fell from the roof and caused his death, and these averments constitute the gist of the charge of negligence preferred.

Section twelve of the act of February 28, 1905 (Acts of 1905 p. 65, §8580 Burns 1908), provides that "the mine boss shall visit and examine every working place in the mine, at least every alternate day while the miners of such place are, or should be, at work, and shall examine and see that each and every working place is properly secured by timbering and that the safety of the mine is assured. He shall see that

a sufficient supply of timbers are always on hand at the miner's working place.''

Section fifteen of said act (§8585 Burns 1908) provides that ''the operator of any mine shall keep a sufficient supply of timber at the mine, and shall deliver all props, caps and timber (of proper lengths) to the rooms of the workmen, when needed and required, so the employes may, at all times, be able to properly secure the workings from caving in. Every operator operating mines in this State shall place a blackboard near the mine entrance sufficiently large, stating thereon in figures the lengths of all timber in use in said mine. The miners shall register thereon, when needing timber for securing their working places, their respective numbers, under the figure indicating the proper lengths of timber required.''

The evidence in this case established the following facts: That appellee's decedent was killed while engaged in appellant's service mining coal in one of appellant's mines, and that his death resulted from the falling of a large piece of slate or soapstone from the roof of the mine upon him; that the accident happened on Tuesday morning, March 27, 1906, about 8 o'clock; that at the time the accident happened there were no timbers in his room with which decedent might have supported the roof of the mine in the place where he was engaged at work; that on the previous Saturday he had verbally notified appellant's mine boss that timbers were needed in his room, and that said mine boss had knowledge and notice that at the time of the accident and for two days prior thereto said working place was not properly supplied with timbers to support the roof and prevent the mine from caving; that appellant maintained a blackboard at the entrance to its mine, as required by statute, where miners could register their requirements and needs in regard to timbers, and that appellee's decedent did not register any request

for timber on said blackboard; that on the evening previous to the happening of the accident, appellee's decedent had fired a blast in the mine, by which the coal in the immediate neighborhood of the scene of the accident was loosened, and which coal so loosened in part supported the piece of slate or soapstone which afterwards fell on and killed decedent, and that immediately before the accident happened, decedent called the attention of the assistant mine boss and of another miner and another workman in the mine to the condition of the roof in the place where the accident happened; that there then appeared cracks in the stone forming the roof; that the assistant mining boss advised decedent to put a prop under the stone, and decedent said he would do so; that the miner consulted told the decedent that he did not think there was any danger, but advised the putting of two props underneath the stone before mining the coal loosened by the blast; that no prop was put under the stone, and decedent mined out the coal loosened by the blast, and the circumstances disclosed by the evidence were of such a character as justified the inference that upon the removal of the loose coal the stone fell upon and killed decedent.

It is appellant's contention that, in order to impose on the operator of the mine the duty of furnishing timbers to the miners engaged at work in the mine, it was essential that the miner should have registered upon the blackboard, required by the statute to be placed at the entrance of the mine, his needs in reference to the timber, and that unless this was done, although the mining boss, who, under the law, represents the operator in the matter of supplying timbers to the mine, may have full knowledge of the lack of timbers in the miner's working place—the miner is not in a position to charge the company with negligence in failing to supply the necessary timbers.

We cannot adopt this contention. The statute expressly imposes on the operator the duty of seeing to it that the miner's working place is supplied with the timbers which

he may need from time to time, as the work progresses, to make his working place entirely secure. The provision with reference to the blackboard was designed evidently as one of the means of keeping the mining boss informed of the necessity for timbers. The law requires the mining boss to visit the mine every alternate day. This provision of the law is very evidently intended in part for the same purpose. But with the fact conceded that the mining boss, who for this purpose represents the operator, has knowledge of the fact that the necessary timbers are not supplied in the miner's working place, the duty to supply them imperatively follows. *Collins Coal Co. v. De Pugh* (1909), 43 Ind. App. 648.

It is also insisted that decedent assumed the risk and hazard of the falling upon him of said stone from the roof of the mine as the work progressed, it being one of the 3. inherent risks of the business and not affected by the statutory provisions imposing duties on the operators; because such statutes contemplate that dangers may arise during the progress of the work of the mine of which the mining boss cannot, in the nature of things, have knowledge, and which his visits are not intended to guard against, and that it was such a peril that caused the death of appellee's decedent.

We cannot regard this contention with favor. As before stated, the theory of appellee's case is that the negligence of appellant in failing to supply the mine with proper timbers to make the miner's working place safe, as he progressed with the work, was the cause of the decedent's death, and dangers that could have been guarded against by decedent, had appellant provided him with the means of doing so, are within the contemplation of the statute, and are not risks assumed by the miner. *Miami Coal Co. v. Kane* (1910), 45 Ind. App. 391; *Davis Coal Co. v. Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Montieth v. Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Island Coal Co. v. Swaggerty* (1903), 159 Ind. 664; *American Rolling Mill Co. v. Hull-*

*inger* (1904), 161 Ind. 673; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290; *Blanchard-Hamilton Furniture Co.* v. *Colvin* (1904), 32 Ind. App. 398; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644; *Brewer* v. *Locke* (1903), 31 Ind. App. 353.

It is insisted that the evidence affirmatively shows that decedent was guilty of contributory negligence, proximately causing his death; that he knew of the defective condition of the roof, and knew there was danger of its caving in on him if he removed the loose coal from under it.

4.

If the assumption of risk was the issue, knowledge of the defective condition and of the peril arising therefrom would be fatal, but where the issue is contributory negligence, a different rule prevails. Knowledge of the defective conditions and of the dangers arising therefrom may or may not be fatal, depending upon whether a person of ordinary prudence would, under all the circumstances, have done what the injured party did. *Davis Coal Co.* v. *Polland, supra; Rase* v. *Minneapolis, etc., R. Co.* (1909), 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138, and cases cited.

Decedent knew that the roof of the mine was defective, that there was some danger that it might fall and injure him, and that it would be best to put props under it before mining out the loose coal, but he did not have the props, and while he knew the stone might fall, it seemed but a bare possibility. One of the experienced miners, consulted by the decedent regarding the condition, told him that he thought there was no danger. Under this condition of the evidence, we cannot say, as a matter of law, that decedent was guilty of contributory negligence.

Of course, no one can know certainly what decedent thought, nor can any one know certainly that he would have used the props had they been at hand to support the defective place in the roof; but the facts and circumstances

disclosed by the evidence justified the jury in the inference that had the timbers been furnished the miner would have used them, as advised by the assistant mine boss and the miner consulted by decedent in reference to the matter, and as he told the assistant mine boss he would do, and that the reason he did not do so was because the timbers for that purpose were not at hand in his working place.

Judgment affirmed.

## On Petition for Rehearing.

Rabb, J.—Appellant insists in its petition for a rehearing, that the interpretation placed by this court, in its opinion in this cause, on the provisions of the statute governing the duty of mine operators in this State is misconceived, and contends that, under the statute in question, the operator's duty to supply miners' working places with timbers is made dependent upon the miners' registering, upon the blackboard required by the statute to be furnished for that purpose, the need of timbers in their working places, and that unless such need is so registered no duty is imposed upon the operator of the mine, or the mine boss who represents him, to supply the timbers.

The language of the statute clearly and expressly imposes, in most positive terms, the duty upon the mine boss, who is the mine operator in that respect, to see that the miner's working place is supplied with proper timbers. This duty is in nowise made dependent upon the condition that he receive notice, through the medium of the blackboard, of the need of timbers in the miner's working place. If the mine boss or the operator has actual knowledge of the need of timber, the duty imperatively follows. If it were a fact that the mine boss had properly discharged his duty with reference to visiting the mines, and that such visitation disclosed no lack of proper timbers in the miner's working place, and said mine boss was not otherwise

informed of the condition, then the miner's failure to register his needs upon the blackboard would excuse the operator from furnishing the timbers, but not otherwise.

Petition for a rehearing overruled.