## DIAMOND BLOCK COAL COMPANY *v.* CUTHBERTSON.

[No. 20,567.  Filed March 15, 1906.]

1.  PLEADING.—*Complaint.—Motion to Make More Specific.—
    Master and Servant.—Mines.—Negligence.*—A complaint show-
    ing that the master permitted a room in its coal mine to become
    dangerous on account of loose, overhanging stone, and that by
    reason thereof the plaintiff, who was working therein, was
    injured by the fall of such stone, is sufficiently specific.  p. 296.

2.  SAME. — *Complaint. — Master and Servant. — Safe Place. —
    Notice of Danger.*—A complaint which alleges that plaintiff had
    no notice of the danger of loose, overhanging rock in defend-
    ant's coal mine, negatives both actual and constructive notice on
    the part of the plaintiff.  p. 297.

3.  MASTER AND SERVANT.—*Assumption of Risk.—Common-Law
    Duties.*—At the common law the servant impliedly assumed the
    risk of all dangers incident to the service.  p. 297.

Diamond Block Coal Co. *v.* Cuthbertson—166 Ind. 290.

4. **MASTER AND SERVANT.** — *Statutory Duties.* — *Assumption of Risk.*—The servant does not assume the risk of dangers caused by the master's violation of the statute regulating coal mining. p. 297.

5. **SAME.**—*Statutory Duties.—Knowledge.—Assumption of Risk.*—Knowledge of the danger caused by defendant's violation of the statutes governing the mining of coal does not as a matter of law defeat plaintiff's right of recovery.  p. 298.

6. **SAME.**—*Dangers.—Notice.—Presumption.*—In the absence of notice, actual or constructive, the servant has the right to presume that the master has performed his duty as to latent defects; and he need not search therefor.  p. 298.

7. **SAME.**—*Assumption of Risk.—Defects.—Patent.—Latent.*—At the common law the servant assumed the risk of all patent but not latent defects.  p. 298.

8. **SAME.**—*Mines and Mining.—Safe Place.*—The operator of a coal mine is required, at the common law and by statute, to use ordinary care to keep the roof of his coal mine in safe condition, and this duty is continuing and cannot be delegated.  p. 299.

9. **APPEAL AND ERROR.**—*Weighing Evidence.*—The Supreme Court will consider only the evidence most favorable to appellee in determining whether the judgment is supported thereby, and if there be any evidence supporting or tending to support such judgment, it will be affirmed.  p. 299.

10. **MASTER AND SERVANT.**—*Mines and Mining.—Safe Place.*—Where the evidence shows that the plaintiff was set to work in a room in a coal mine, which had not been properly inspected and for which no props were provided and which was dangerous on account of loose, overhanging rock, by reason of which he was injured, the master is guilty of negligence both by statute and by the common law.  p. 300.

11. **SAME.**—*Safe Place.—Making Place Safe.—Question for Jury.*—Where a servant went into a room in a coal mine for the purpose of assisting in placing a mining machine therein, and, while at such work, assisted his coservant in taking down an overhanging rock which appeared dangerous, and where two minutes afterward another stone five feet away fell on him, whether such stone was a part of, or fell because of the removal of, the first stone, and thus whether such servant was engaged in making the dangerous room safe, was for the jury.  p. 304.

12. **SAME.**—*Mines and Mining.—Safe Place.—Contributory Negligence.—Question for Jury.*—Whether a servant who went into a room in a coal mine to assist in placing mining machinery therein, and who assisted his coservant in pulling down one

Diamond Block Coal Co. *v.* Cuthbertson—166 Ind. 290.

loose rock, was guilty of contributory negligence in remaining in such room, another stone five feet away falling two minutes later and injuring him, is for the jury.   p. 306.

13.  MASTER AND SERVANT. — *Negligence.—Contributory.—When for Jury.*—When there is a dispute as to the facts or where two inferences may reasonably be drawn therefrom, the question of contributory negligence is for the jury.   p. 306.

14.  TRIAL.—*Instructions.—Covered by Those Given.—Master and Servant.—Assumption of Risk.*—Where the court has already given, at defendant's request, instructions completely covering the doctrine of assumption of risk at the common law, it is not error, so far as such question is concerned, to refuse another covering in part the same ground.   p. 307.

15.  MASTER AND SERVANT.—*Assumption of Risk.—Origin.*—The assumption of the ordinary risks of his service arises from the servant's contract relation with the master.   p. 310.

16.  SAME.—*Assumption of Risk.—Contributory Negligence.— Violation of Statute.*—A coal miner's continuing to work in a room known to be dangerous without notifying the mining boss of such danger, as provided by §7472 Burns 1901, Acts 1897, p. 168, §4, may constitute contributory negligence on the part of such miner, but not an assumption of the risk.   p. 311.

17.  SAME. — *Rules and Regulations. — Breach. — Contributory Negligence.—Assumption of Risk.*—The breach of the master's rules and regulations by the servant does not constitute an assumption of risk, but may constitute contributory negligence, but which, to defeat recovery, must be a proximate cause of the injury.   p. 313.

18.  TRIAL. — *Instructions. — Requested. — Correctness.*—Instructions requested must be correct or the court may properly reject them, the trial judge being under no duty to correct them. p. 314.

19.  APPEAL AND ERROR. — *Weighing Evidence.* — The Supreme Court will not weigh conflicting evidence in a case triable by jury.   p. 314.

20.  EVIDENCE.—*Conversations.—Objections.*—An objection to the admission of evidence of a conversation with K. that defendant could not be bound by a conversation witness had with O. is properly overruled.   p. 315.

21.  SAME. — *Irresponsive Answers. — Striking Out.* — Where an answer of a witness is irresponsive, the objections to the question propounded do not reach the defect, but a motion must be made to strike out such answer.   p. 315.

From Clay Circuit Court; *P. O. Colliver,* Judge.

Action by Hugh Cuthbertson against the Diamond Block Coal Company. From a judgment of the Appellate Court affirming a judgment for plaintiff for $7,500, defendant appeals, under subd. 3, §1337j Burns 1901, Acts 1901, p. 565, §10. *Affirmed.*

*E. E. Stevenson, F. Winter, Clarence Winter, E. S. Holliday* and *F. A. Horner,* for appellant.

*Coffey & McGregor* and *G. S. Payne,* for appellee.

JORDAN, J.—This was an action instituted by appellee against appellant to recover damages for personal injuries sustained while in the employ of the latter as a coal miner. The cause was tried upon an amended complaint consisting of three paragraphs, the first and second of which are based on §7473 Burns 1901, Acts 1891, p. 57, §13, of the act relating to coal mines. This section declares a liability against the owner, operator, agent or lessee of a coal mine for any injury to person or property occasioned by any violation of this act, or for any wilful failure to comply with its provisions.

The complaint may be summarized as follows: The first paragraph alleges that the defendant coal company is a corporation duly organized, etc., and is engaged in mining coal in Clay county, Indiana, by means of shafts, etc., a description of the method of operation being stated. Said defendant at and prior to the time of the injury in question had in its employ over one hundred men, including the plaintiff herein. It was the duty of the defendant to use reasonable care and diligence in furnishing the plaintiff with a safe place in which to perform his work. It was also its duty under the statute to employ a competent mine boss. It was the latter's duty to visit and examine every working place in defendant's mine on every alternate day, and to examine and see that every such place was properly secured by props and timber, and that the safety of the mine was thereby secured. It was the further duty of the mine boss to see that a sufficient supply of props and timber was always on

hand.   It is alleged that the defendant failed and neglected
to perform its said duty, and that its mine boss failed to
visit the working places of said mine on each alternate day
while plaintiff was employed at said mine; that said boss
failed to see that said working places were properly secured
by props and timber so as to render said working places
safe, and that he did not see that a sufficient supply of props
and timber was always on hand as required; that three
days prior to the time when the plaintiff sustained the in-
jury complained of said mine boss visited the working place
wherein plaintiff was at work when he sustained the injury
complained of, and he found the roof overhanging said
place loose, cracked and in an unsafe condition; that he
found that said roof was not properly secured by props and
timbers, and was liable to "fall and cave in," but, notwith-
standing the fact that the defendant had full knowledge
of the unsafe and dangerous condition of said working
place, it negligently and carelessly permitted and directed
that the plaintiff should perform his work therein; that
pursuant to said direction of the defendant, given through
its mine boss, plaintiff did on February 13, 1900, enter
said working place, and while he was engaged at work
therein in the service of the defendant and in the line of his
duty the roof thereof, without notice or warning, by reason
of said defects, gave way, caved in and fell upon appellee to
his injury and damage, etc.   It is also alleged that at and
prior to his sustaining said injury he was ignorant of the
unsafe condition of the working place in question, and had
no knowledge of its said condition and no notice or knowl-
edge of the dangers and perils thereof.   There was nothing
in the appearance of the slate or stone which fell from the
roof upon him to indicate any immediate danger of its
falling; that the same could have been secured by props and
timbers, and said working place could have been made
safe and secure by the defendant if proper timbers had
been supplied for that purpose.   It is averred that the

plaintiff was in the exercise of due care, and that the injury which he sustained was caused by the fault and negligence of the defendant.

The second paragraph contains all of the material allegations of the first, and in addition avers that it was the duty of the defendant to furnish a "bank boss" to see that all working places were made safe; that while it did have such bank boss in its employ he failed and neglected to do his duty, etc. The third paragraph declares upon the common-law liability of the master, and proceeds upon the theory that when the latter has knowledge of a defect in the working place of his employe which renders it unsafe, and where such defect is of a character that it may escape the notice or observation of the employe, it is the duty of the master to notify the latter, and, failing to do so, he is liable for any injury which the employe may sustain by reason of such defect. After setting forth the defective condition of the roof of the room of the mine where the plaintiff was injured as alleged in the first and second paragraphs, it alleges that the defendant had full knowledge of such defects, and that the loose and unsafe condition of the roof could have been easily ascertained by inspection, but was of such a character as to show no outward defects or indications of its unsafe condition, and was of such a character as the plaintiff was liable to overlook; that by reason thereof it became and was the duty of the defendant to notify the plaintiff thereof; that neither the defendant nor any one else notified the plaintiff of the defects in said roof, nor did he, at the time he sustained said injury, or prior thereto, have any knowledge or notice of the defects in said roof, or of its unsafe condition; that of these defects and unsafe condition the defendant had full knowledge, and, well knowing that the plaintiff was wholly ignorant thereof, defendant did on February 13, 1900, direct the plaintiff to enter said room and working place to perform his work, all of which the plaintiff did in

total ignorance of its unsafe condition, etc. Then follow the same allegations as to due care and absence of contributory negligence on the part of the plaintiff as alleged and contained in the first and second paragraphs.

The appellant moved that the lower court compel the appellee to make his complaint more specific, in this: "That he be required to state in each paragraph the particular kind of work upon which he was engaged and the manner in which he was performing said work at the time the alleged injury occurred." This motion the court denied. Thereupon appellant unsuccessfully demurred to each paragraph of the complaint. The answer was a general denial. The case was tried by a jury and a general verdict returned in favor of appellee, assessing his damages at $7,500. Over appellant's motion for a new trial judgment was rendered on the verdict.

The assignments of error herein are predicated upon the rulings of the court in denying the motion to make the complaint more specific, in overruling the demurrer to each paragraph of the complaint, and in denying the motion for a new trial.

The motion to make the complaint more specific was properly denied. It will be observed that appellant thereby moved that the court require appellee to state in his

1.   pleading the kind of work in which he was engaged at the time of the accident, and the manner in which he was performing the same at the time he was injured. As to these matters appellant was sufficiently advised by the complaint. The allegations thereof can not be said to be so indefinite or uncertain as to fail to inform appellant of the charge in question. The averments are sufficiently definite and certain as to apprise appellant of what it was required to meet and thereby be enabled to prepare for its defense. *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663.

It is next contended that neither paragraph of the complaint is sufficient to withstand the demurrer. The reasons in the main asserted in support of this contention 2. are: (1) It is not shown that appellee made an inspection or careful observation of the premises wherein he was engaged at work at the time he sustained the injury; (2) each paragraph of the complaint discloses that appellee assumed the risk of the unsafe condition of the place in which he was engaged at work at the time of the accident. There are no facts exhibited by either paragraph of the complaint to justify this contention. Each of them discloses that appellant knew of the defects or unsafe condition or perils of the premises in question but an absence of such knowledge on the part of appellee is positively averred. It was not essential that the pleading, in addition to negativing knowledge on appellee's part, should go further and allege that he had no means or opportunity of discovering or ascertaining the defects or dangers of the place in controversy. The averment that he had no knowledge of the unsafe or dangerous condition of the place in question is sufficient, as a matter of pleading, to show not only an absence of actual knowledge, but also that of implied or constructive notice or knowledge on appellee's part. *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, and authorities cited.

That by the common law a servant under his contract of employment impliedly assumes all of the risks incident to the service in which he engages is a well-settled 3. principle under the law pertaining to master and servant. But such assumption does not include or embrace the hazard of extraordinary risks which are the result of the negligence of the master in failing to perform the duties enjoined upon him by law. In this case, so far as appellee's right of action is based upon the statute 4. concerning coal mines, it can not be said that he assumed the risks arising from appellant's disre-

gard or violation of its statutory duties. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319, and cases cited; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664.

Ordinarily it is necessary in a complaint by a servant to recover from the master for an injury sustained by reason of an unsafe working place to negative knowledge on his part of the unsafe condition of the premises in question. This is essential in order to show that such servant did not voluntarily assume the dangers and perils complained of as one of the risks of the employment in which he was engaged. *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, and authorities cited. In respect, however, to the sufficiency of a complaint under the statute in question on this feature of the case, see *Davis Coal Co.* v. *Polland, supra.*

As a general rule, in the absence of any knowledge or notice to the contrary, a servant is justified in relying upon the assumption that the master has discharged his duty under the law, and has exercised reasonable care in furnishing and maintaining a safe working place, and within reasonable limits he may act upon such assumption. The law exacts of the servant the use of his faculties and senses in ascertaining whether danger actually exists, where the same is obvious or open to view; but, in the absence of apparent or known defects or perils in the place where he works, he is not bound to make an inspection thereof, or search therein in order to discover whether such place is safe or unsafe. *Baltimore, etc., R. Co.* v. *Roberts, supra; Rogers* v. *Leyden* (1891), 127 Ind. 50; *Island Coal Co.* v. *Risher* (1895), 13 Ind. App. 98.

Obvious defects or perils such as are open to an ordinarily careful observation are regarded by the law as perils incident to the service, but latent defects—those not discoverable by the exercise of reasonable care —are not considered as risks incident to the employment, and therefore are never assumed by the servant.

*Wabash, etc., R. Co.* v. *Morgan* (1892), 132 Ind. 430. When appellee, as the facts in the complaint disclose, was directed by appellant to work in the place in controversy, he had the right, in the absence of any knowledge to the contrary, to assume that such °place had been made safe by appellant as exacted by law. *Rogers* v. *Leyden, supra.*

Appellant, both at common law and under the statute in question, was required to use ordinary care and skill to keep the apartment of its coal mine where appellee was assigned to work and the roof thereof in at least a reasonably safe condition in which to work.

8. This was a continuing duty resting upon it, and one which it could not delegate so as to escape liability for a failure to discharge it. *Island Coal Co.* v. *Risher, supra; Davis Coal Co.* v. *Polland, supra.* Each paragraph of the complaint states facts sufficient to show negligence on appellant's part which resulted in the injury of which appellee complains. There are no facts in either paragraph of the pleading in question tending to show that appellee was guilty of contributory negligence, and it is sufficiently disclosed that he did not voluntarily assume the unsafe condition of the premises as one of the risks of the service in which he was engaged. There was no error in overruling the demurrer to each of the paragraphs in controversy.

Counsel for appellant next insist that the evidence shows that appellee was guilty of negligence which contributed to the injury which he received. They concede that there is evidence tending to establish that appellant was negligent as charged in the complaint.

9. They do not ask that we weigh the evidence, but that we consider the testimony given by appellee as a witness on the trial, and then apply the law to the facts sworn to by him, and thereby determine the question of his contributory negligence. It is a well-settled rule of appellate procedure that, in determining the sufficiency of the evidence to support the judgment below, this court will con-

sider only the evidence in the record which is most favorable to the appellee. In order to authorize us on an appeal to disturb the judgment of the trial court on the evidence alone, it must appear that the evidence in the case is such as to raise or present for our decision not merely a question of fact, but one purely of law on some material issue, and that such question of law under the judgment of the trial court was decided erroneously. *Carver* v. *Forry* (1902), 158 Ind. 76, and cases cited; *Creamery, etc., Co.* v. *Hotsenpiller* (1902), 159 Ind. 99; *Republic Iron & Steel Co.* v. *Berkes* (1904), 162 Ind. 517. The fact that the evidence in the case on some particular and material issue appears to be weak or unsatisfactory is not alone sufficient to warrant this court in disturbing the judgment. *Republic Iron & Steel Co.* v. *Berkes, supra.*

Guided by these well-established rules, we pass to the consideration of the evidence in the case at bar. There is evidence in the record to prove the following facts:

10. Appellant is a duly organized corporation, and as such was, on February 13, 1900, engaged in the business of mining coal in Clay county, Indiana. The mining was carried on by means of sinking a shaft to the coal bed, and then driving entries or roadways through the coal from the bottom of the shaft, from which excavations or rooms were made on either side. The coal was mined and transported through these entries to the bottom of the shaft, and then hoisted to the surface. On said February 13, 1900, and prior thereto, appellant, in conducting its said business, had in its employ a large number of men, among whom was appellee. One of the entries of said mine ran east and west and turned off to the north into apartments or excavations, called rooms, among which were rooms known as No. 1 and No. 2. On and prior to said February 13, appellant had in its service John Cuthbertson, who acted as its mine boss under the provisions of the coal-mining statute in controversy. The

entry of rooms No. 1 and No. 2 before Cuthbertson became mine boss had for some time been full of water. After he became the mine boss for appellant he was ordered to clear out the water and put men to work in this entry. The room in which appellee was injured as hereinafter shown was known as No. 2. It was about twenty-eight feet wide and thirty-five feet long. It was thirty-five yards from the face of the coal in this room to the entry. A roadway was on the east side of the room in question. The coal in appellant's mine at and prior to the accident in question was mined by the use of machines. Appellant obtained the latter from a firm in Chicago, and this firm appears to have sent Mr. O'Brien to the mine for the purpose of teaching appellant's employes how to operate the machines. O'Brien appears to have had charge of the machines for this purpose, and appellant's superintendent instructed the mine boss to furnish him with all the men he required to run the machines. On February 13, 1900, O'Brien reported that he was short two machine runners. He applied to the mine boss for instructions, and was informed by the latter that rooms No. 1 and No. 2 were ready for the machines. It was not the duty of the men who worked at the machines to put the rooms in condition for the use thereof. This duty was performed by the mine boss and the men under his charge. Among others, it was the duty of the mine boss, under the statute, to see that all loose stone and slate in any of the rooms were taken down or propped by means of timbers before the men were permitted to enter therein to work with the machines, and also to see "that a sufficient supply of props and timber are always on hand at the miners' working places." Three days before the occurrence of the accident in question the mine boss visited and inspected the roof of room No. 2. When he tapped or struck the roof with a pick a dull sound was emitted, which indicated that the roof was broken and was giving way. The mine boss

stated on the trial that he did not think it was dangerous, but admitted that he did not know that the room was in as bad a condition as it was actually shown to be. He knew that room No. 2 was unsafe, that the roof thereof was not propped, and that no props or timber had been supplied to make the room safe so far as it could be made by propping. No notice or warning was given by appellant to appellee before he entered the room in question in respect to the unsafe condition of the roof. The mine boss admitted at the trial that, without any knowledge in respect to the condition of the room in question on the part of appellee, he sent him into said room to assist in operating one of the machines. He admitted that he supposed this room was ready and in a condition for work, without any knowledge as to such facts. The condition of the stone in the roof of room No. 2, which is shown to have fallen, was of such a character that under the circumstances it could have been easily overlooked by appellee, and have escaped his observation. There is evidence to show that the mine boss neglected the duty enjoined upon him by the statute in failing to visit the room in controversy and to see that it was made safe, and also in failing to see that props and timber were at hand at said working place, as required by the statute. It appears that he employed Ab. Miller to place rooms No. 2 and No. 3 in order for the men to operate the machines. Miller, as it appears, put room No. 3 in order, but, as the mine boss stated at the trial, he "skipped out" without doing anything towards placing room No. 2 in order. The mine boss, prior to the injury received by appellee, had under his charge the inspection of eight entries, together with the rooms which turned off from these entries, five of the entries being in the lower vein, and three in the upper vein, room No. 2 being in the latter vein. The mine boss, on finding that he was unable properly to inspect and look after the safety of the entries and rooms which had been placed under his charge, applied to the

superintendent and manager of appellant's mine for help, and requested that he be furnished with what is known as an entry boss. The superintendent refused this request, on the ground that it would be too expensive to employ a man for this purpose. Prior to the time appellee was injured he had worked in coal mines for about five years; a part of the time serving, as he denominated it, as a "roustabout." He had had about two or three months' experience as a helper in operating machines. The machines at appellant's mine were run by electricity, and when operated they were moved from left to right, and as the work of cutting the coal progressed the apartments of the mine in which they were operated were propped or timbered by the men who ran the machines. Appellant's mine boss is shown by the evidence to have neglected to furnish props for room No. 2. If he had discharged his duty in this respect, there is evidence to prove that the stone which fell on appellee and injured him, as hereinafter shown, could have been propped and thereby supported without interfering with the operations of the machines. On February 13, 1900, appellee was directed to go to work in rooms No. 1 and No. 2 as a helper to Marion Miller. Miller was an experienced miner, and had worked in coal mines for about eighteen years. On the aforesaid day Miller and appellee first moved the machine into room No. 1. They finished the work therein about noon, and, after eating dinner in the entry, they moved the machine into room No. 2. Appellee had never before been in the latter room, and knew nothing whatever in regard to its condition. After he and Miller had entered they discovered a large stone over the roadway. Miller made an examination and decided that the "stone was a bad one," and that it must be taken down, as there were no props on hand by which it could be propped.

Appellee at the trial testified that, knowing that Miller, the man with whom he was to act as a helper in operating the machine, was an experienced miner and older than himself, he believed that what Miller said should be done under the circumstances was all right. It appears that Miller by means of a pick and crowbar, helped and aided by appellee, succeeded in pulling the stone down. As to whether a sledge-hammer was used in removing the stone in question the evidence is conflicting; appellee testifying that no sledge-hammer or wedges were used for that purpose. Some two or more minutes after the stone had been pulled down, a stone weighing about one hundred fifty pounds in another part of the roof of the room in question, five or more feet from the one which had been removed from the roof, fell upon appellee, thereby severely injuring him. This latter stone had no connection with the one that had been previously pulled down. Appellee was only in the room a few minutes before he was injured in the manner stated. At the time he sustained the injury he was in good health and was sound in body. He was between twenty-two and twenty-three years old, and had a wife and one child. He earned about $2.50 per day by working in and about the mine. As a result of the injury he is permanently disabled, and is shown to be a "physical wreck." His urinary organs and limbs are paralyzed, and he is unable to work, and can not stand on his feet except when supported by crutches. That appellant is shown by the evidence in the case to be guilty of negligence both at common law and under the statute in question is beyond successful controversy.

Counsel argue that under the evidence it appears that appellee, together with Miller, his associate, was engaged at the time he was injured in voluntarily making a dangerous place safe. Therefore it is insisted that he had knowledge of the danger, and consequently assumed the risk. Appellant's theory is that

the injury in question resulted from the fact that Miller and appellee, after entering room No. 2, removed from the roof thereof what may be denominated, for convenience, as stone number one. If there were undisputed evidence in the record to establish this contention, we would have quite a different question presented for our decision; but, as heretofore stated, there is evidence to show that the stone which was removed and the one which caused the injury were more than five feet apart, and that they had no connection whatever with each other. Because the stone which may be denominated number two fell and injured appellee in about two minutes after number one was removed, it is contended that, from this fact, it necessarily follows, or must be inferred, that the removal of the first stone caused or produced the fall of the other. As to whether the latter fact might be inferred or deduced from other given facts in the case was purely a question for the jury, and not one for the determination of this court.

There is evidence to prove that there was nothing in the appearance of the stone which fell and injured appellee to indicate to him that there was any danger of its falling. It is true that it may be said that from the appearance and condition of the stone which he and his associate, Miller, removed, and from what Miller said in respect to its being a "bad stone" and must come down, appellee was notified that so far as that particular stone was concerned it was unsafe or dangerous, but, to reassert, there is positive evidence to show that appellee had no knowledge that the stone which fell and injured him was dangerous or liable to fall at any time in the near future. In the absence of undisputed evidence to prove that the act of removing or pulling down the stone in controversy proximately caused or contributed to the fall of the other under the circumstances, the case presents a question of fact and not one of law; consequently that question in this appeal must be left as determined by the jury in the lower court.

What we have said, on the questions presented on demurrer to the complaint, in regard to the assumption of risk and inspection of premises on the part of a 12. servant, fully applies to the same points made and presented by appellant under the evidence. The question of contributory negligence in this case was one of fact to be submitted to the jury under proper instructions by the trial court. The latter appears to have fully and fairly instructed the jury on the law relative to all of the issues in the case. The burden of proving contributory negligence under §359a Burns 1901, Acts 1899, p. 58, rested on appellant; and it was required to establish it by a fair preponderance of all the evidence in the case applicable thereto. As to when contributory negligence becomes a question of law for the decision of the court, see *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368, and authorities cited.

It is only where there is no dispute as to controlling facts in a case, and no room for a different conclusion or inference on the part of reasonable minds, that the 13. question of contributory negligence becomes one of law for the decision of the court. "Whenever there is any doubt as to the facts, it is the province of the jury to determine the question; or whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury." Beach, Contrib. Neg. (2d ed.), p. 569, as quoted in *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39, and cases cited.

Certainly, under the evidence in the case at bar, when tested by the rule affirmed, it can not be asserted that there is no room for two different inferences or conclusions to be deduced by reasonable minds on the issue of appellee's contributory negligence. It is manifest, we think, that the evidence in the case bearing upon that issue is of such a character as to present a question of fact for the determi-

nation of the jury, and not one of law for the decision of this court. As there is evidence to support the judgment on every material point on the first and second paragraphs, it follows that we can not disturb it upon the evidence.

It is earnestly contended by counsel that the court erred in refusing, over appellant's request, to give charge number eleven to the jury. This instruction is as follows:

14. "Where a miner working in a coal mine in this State learns that his working place in such mine is in an unsafe condition, it is made his duty by the statutes of the State at once to cease working at such place and to notify the mining boss of such defect, whose duty it then becomes to give the miner so reporting such unsafe place a written acknowledgment of the receipt of such notice; and a coal miner who returns to his work or continues to work in such unsafe place before repair thereof is made by those whose duty it is to make such repairs does so in violation of the statute and at his peril. So if you find that the plaintiff in this cause ascertained that his working place in the mine of the defendant was in an unsafe condition by reason of loose, overhanging stone or other substances, it at once became his duty to cease work at such unsafe place and report the unsafe condition of the same to the mining boss, whose duty it would then have been to give him a written acknowledgment of the receipt of such notice, and proceed at once to inspect such unsafe place and put the same in safe condition. But if you find that the plaintiff ascertained that his working place in such place in such mine was in an unsafe condition by reason of overhanging, loose stone or other substance, and that he failed to report the same to the mine boss, but continued to work thereat, and attempted himself, on his own volition, to make the place safe, he did so at his peril and in violation of the statute upon the subject, thereby assuming the risk; and if he was injured by reason thereof

I instruct you that under such condition he can not recover in this case."

Counsel assert that this charge states the theory of appellant's defense to the action, and that it is in perfect harmony with §7472 Burns 1901, Acts 1897, p. 168, §4, upon which it is predicated, and should, therefore, have been given. This section, which is a part of the act pertaining to coal mines, is as follows: "That the mining boss shall visit and examine every working place in the mine, at least every alternate day while the miners of such place are, or should be at work, and shall examine and see that each and every working place is properly secured by props and timber and that safety of the mine is assured. He shall see that a sufficient supply of props and timber are always on hand at the miner's working places. He shall also see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work are carefully secured. Whenever such mining boss shall have an unsafe place reported to him, he shall order and direct that the same be placed in a safe condition; and until such is done no person shall enter such unsafe place except for the purpose of making it safe. Whenever any miner working in said mine shall learn of such unsafe place he shall at once notify the mining boss thereof and it shall be the duty of said mining boss to give him, properly filled out, an acknowledgment of such notice in the following form: I hereby acknowledge receipt of notice from ———— of the unsafe condition of the mine as follows: ———————— dated this —— day of ———, 18—.          ————————, Mining Boss. The possession by the miner of such written acknowledgment shall be the proof of the receipt of such notice by said boss whenever such question shall arise; and upon receipt of such notice such mine boss shall at once inspect such place and proceed to put the same in good and safe condition. As soon as such unsafe place has been repaired

to the approval of such boss, he shall then give permission for men to return to work therein, but no miner shall return to work therein until such repair has been made and permission given."

Before especially considering the instruction in controversy, it becomes necessary to refer to some of the particular charges given by the court, at the request of appellant, relative to the assumption of risk on the part of appellee. By instruction two the court substantially advised the jury that if they found from the evidence that the place in which the plaintiff was working at the time he was injured was unsafe and dangerous, and that said condition was known to him at the time, but without any direction or order from the defendant he voluntarily undertook to make the place safe, and while engaged in removing the dangers and in consequence and by reason of his efforts to make such working place safe he received the injury for which he seeks to recover, then and under these circumstances the court informed the jury that the plaintiff assumed the risk and the defendant was not liable.

By charge eight the jury were advised that if they found from the evidence that a portion of the room in which plaintiff was working when injured was in a defective and dangerous condition; that such fact was known to the plaintiff or was so apparent that he, by the exercise of ordinary care, might have known it, and without any orders or directions from the defendant, he at his own volition undertook to remedy such defect and remove the danger by taking down that part of the roof shown to be dangerous; that he did take down such defective roof and by reason and as a consequence thereof he loosened another part of the roof which fell upon and injured him, then, said the court, there can be no recovery, because in voluntarily attempting to take down a portion of the roof plaintiff assumed the risk of all injuries occasioned thereby.

By instruction ten the court stated to the jury that if they found from the evidence that the working place of plaintiff at the time he was injured was not properly timbered and supported by props, by reason of which it became unsafe, of which fact plaintiff had knowledge, but thereafter proceeded to work in such place without any promise from the defendant to repair the same, and attempted at his own volition to make it safe, and thereby sustained injury, then he can not recover, for the reason that by working in such unsafe place, after knowledge of its condition, he assumed the risk.

It is evident, we think, that by these instructions, and by others given at the request of appellant along the same lines, all features of appellant's defense under the rules at common law in regard to the assumption of risk by appellee, so far as the same can be said, under the evidence, to be involved, were fully covered. Appellant certainly then has no grounds for complaint that its theory under the evidence in respect to the assumption of risk at common law was not fully presented to the jury under the instructions given upon its own request.

The assumption of risk by appellee, so far as that question can be said to be involved in this case, does not rest upon nor arise out of the provisions of the statute upon which the charge professes to be predicated, but under the principles of the common law relative to the relation of master and servant it impliedly arises out of the contract of employment.

Under instruction eleven, as formulated, the provisions of the statute hereinbefore set out were so construed in effect as to have read therein that a miner on learning of an unsafe place was not only required at once to notify the mine boss of the unsafe place, but that it was made his duty under the statute at once to cease working in such unsafe place. By the latter portion of the charge which is introduced by the word "but" the jury were to be advised as a mat-

ter of law that if they found that the plaintiff ascertained that his working place in the mine was in an unsafe condition by reason of overhanging stone, etc., and he failed to report the same to the mine boss, but continued to work thereat and attempted himself, on his own volition, to make the same safe, he did so at his peril and in violation of the statute upon the subject, thereby assuming the risk, and therefore he could not recover. It may be noted that if we eliminate from this latter part of the charge all that is stated relative to appellee's failure to notify or report to the mine boss, the portion remaining will be substantially and in effect but a repetition of parts of the charges given to which we have already referred.

The evident theory of instruction eleven is that the plaintiff, on discovering that his working place in the mine was unsafe by reason of loose, overhanging stone, etc., was by the statute required to cease work at once and notify the mine boss, and that by his neglect in this respect he must be held to have assumed the risk of the unsafe working place, and if such assumption of risk resulted in the injury of which he complained he could not recover. That this is what appellant, by the instruction, sought to have impressed upon the minds of the jury is manifest for the reason that all statements therein other than those relative to the provisions of §7472 Burns 1901, Acts 1897, p. 168, §4, had been embraced in other instructions given by the court at appellant's request. In other words, it may be said that by the charge in controversy appellant was endeavoring to have the court declare to the jury as a matter of law that a violation of the statute as mentioned in said instruction would, on the part of appellee, be an assumption of risk. The charge in question for this reason alone, if for no other, can not be justified under the statute. A violation of the material parts of the statute by a miner might be held to be, on his part, negligence *per se,* but not as an assumption of risk in the

absence of any express provision in the act to that effect. It must be remembered that there is quite a distinction between the two rules, viz., assumption of risk and contributory negligence, and the two should never be confounded or confused.

*Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319, was an action by a miner for personal injuries imputed to a violation by the coal company of the same statute upon which this action is based, by reason of its failure to provide safeguards as required by said act. Baker, J., speaking for this court in that appeal, said: "Assumption of risk is a matter of contract. Contributory negligence is a question of conduct. If appellee were to be defeated by the rule of assumed risk, it would be because he agreed, long before the accident happened, that he would assume the very risk from which his injury arose. If appellee were to be defeated by the rule of contributory negligence, it would be because his conduct, at the time of the accident and under all of the attendant circumstances, fell short of ordinary care. If the one circumstance of the employe's knowledge of the employer's failure to provide the statutory safeguards were held, as a matter of law, always to overcome the other circumstances characterizing the employe's conduct at the time of the accident, assumption of risk would be successfully masquerading in the guise of contributory negligence. If assumption of risk is the issue, knowledge of defective conditions and acquiescence therein are fatal. If contributory negligence is the issue, knowledge of defective conditions and acquiescence therein may be fatal, may be not, depending upon whether a person of ordinary prudence, under all the circumstances, would have done what the injured person did. If the risk is so great and immediately threatening that a person of ordinary prudence, under all the circumstances, would not take it, contributory negligence is established. If the risk is not so great and immediately threatening

but that a person of ordinary prudence, under all the circumstances, would take it, contributory negligence is not established."

It may be asserted that the authorities generally affirm that the failure of the servant to obey reasonable rules and regulations, either statutory or those adopted by the master, which are intended to promote the safety of the servant, constitutes not an assumption of risk, but contributory negligence. Such disobedience on the part of the servant, however, to be available to defeat his recovery, must appear to have proximately caused or to have contributed to the accident to which the injury in question is imputed. Beach, Contrib. Neg. (3d ed.), §373, and cases cited; *Pennsylvania Co.* v. *Roney* (1883), 89 Ind. 453, 46 Am. Rep. 173; White, Personal Injuries in Mines, §§251, 279; *Heaney* v. *Glasgow Iron & Steel Co.* (1898), 25 Sess. Cas. (4th Series) 903.

In this latter case the plaintiff was held to have been guilty of contributory negligence in failing to obey a special rule established by the coal company under and in pursuance of the provisions of the coal miners' act of parliament. The rule in question is as follows: "If from accident or any other cause miners are at any time unable to find a sufficient supply of timber at place appointed, they are expressly forbidden to remain at their working places."

We have said all in respect to the provisions of §7472, *supra,* that we deem essential in this case. It is clear under the decision of this court in *Davis Coal Co.* v. *Polland, supra,* and the other authorities cited upon the question, that instruction eleven placed the result of a violation of the statute on the wrong ground, and for that reason alone it was not a proper interpretation of the law, was misleading, and, therefore, the court's refusal to give it was not error.

The rule is well settled that it is not error for a court to refuse an instruction unless it is the duty of the court to give it in the terms as requested; or, in other words, the charge requested must be correct both in its form and substance and such as the court might give to the jury without modification or omission. *Goodwin* v. *State* (1884), 96 Ind. 550, and authorities cited; *Ricketts* v. *Harvey* (1886), 106 Ind. 564; 1 Blashfield, Instructions to Juries, §137.

To recapitulate: in regard to the evidence it may be said to be ample to establish all the material facts in the case to entitle appellee to recover, and especially the two facts which appellant so earnestly controverts: (1) That there was no connection between the stone which appellee assisted in removing from the roof of the room and the one which fell and injured him; (2) that the removal of the one did not cause or produce the fall of the other.

It is true that it may be said that the condition of stone number one, the one which was removed by appellee and his associate, so far as it was concerned, indicated danger, but aside from the condition of this stone there is no undisputed evidence to show that other parts of the roof were obviously dangerous, or that appellee knew, or had ascertained, that his working place, aside from the stone which was removed, was in other respects unsafe or dangerous. As shown by the evidence, he was sent or directed by the mine boss to work in the place in which he was injured. Under the circumstances he had the right, therefore, to assume that such place had been made safe in all respects, as required by law, unless he knew or ascertained to the contrary. In respect to these questions the jury were fully instructed by the court. They were under the evidence questions solely for the determination of the jury. The jury decided them adversely to appellant, thereby virtually eliminating the removal of stone number one as a factor

from the case, and, as we have already said, we can not disturb the finding of the jury in any respect upon the evidence in the case.

At the trial James Cuthbertson was called as a witness by the appellee, and he testified that he had acted as appellant's superintendent for about three years; that all of the bills, etc., were made out in the name of Charles F. Keeler, and that he (the witness) operated the mines under the directions and orders of said Keeler. Counsel for appellee propounded to the witness the following question: "Now if you had any conversation with him [Keeler] while in the discharge of your duties as superintendent, in relation to furnishing men to Mr. O'Brien to test the machines, you may tell what he said." Counsel for appellant objected to this question, assigning as a reason therefor that any conversation the witness had with O'Brien could not bind the defendant. The court overruled appellant's objection and exception to the question and the witness answered: "My instructions were to furnish Mr. O'Brien all the men he required." The objection made by appellant that it would not be bound by any conversation which the witness had with Mr. O'Brien was not a proper objection, for the reason that the question did not call for any conversation had with O'Brien, but called for one which the witness had with Keeler. Again the answer of the witness was not responsive to the question and appellant should have moved to strike out and reject the answer. This it did not do. 2 Elliott, Evidence, §832.

Having carefully considered all of the questions properly presented by appellant's counsel, we discover no error in law to justify a reversal. The judgment of the Clay Circuit Court is therefore affirmed.