# ANTIOCH COAL COMPANY *v.* ROCKEY.

[No. 20,869.   Filed November 1, 1907.]

1. NEGLIGENCE.—*Coal Mines.—Statutes.*—The purpose of our recent mining statutes was to provide more effectively than at the common law for the safety and legal protection of miners.   p. 251.

2. SAME.—*Coal Mines.—Statutes.—Violation.*—The violation of the mining laws, by the master, constitutes negligence *per se.*   pp. 252, 259.

3. MASTER AND SERVANT.—*Coal Mines.—Mining Boss.—Vice-Principal.*—In the operation of a coal mine, the master is under the continuing statutory duty of keeping the mine in a reasonably safe condition; and the performance of such duty cannot be delegated to a mining boss so as to relieve the master.   p. 252.

4. SAME.—*Coal Mines.—Mining Boss.—Negligence of.*—The negligence of the mining boss, under the coal mining statutes, renders the master liable.   p. 253.

5. PLEADING.—*Complaint.—Master and Servant.—Coal Mines.—Safe Place.*—A complaint alleging that defendant coal company directed plaintiff to mine coal in a certain room; that the mining boss failed to inspect such room at least once every alternate day; that by reason thereof the roof of the room became dangerous between the props and the face of the coal which was gradually receding as it was worked, and a large stone fell upon plaintiff injuring him, sufficiently shows that the injury occurred at a place where defendant was required to use props.   p. 253.

6. SAME.—*Complaint.—Master and Servant.—Coal Mines.—Safe Place.*—A complaint for damages for injuries to a coal miner, caused by the fall of a stone from the roof of the room wherein such miner was excavating coal by machinery, is not bad because of an inference that the roof at the place between the props already set and the face of the coal could not be propped on account of the work therein, since such roof could be safeguarded otherwise, the statute (§7479 Burns 1901, Acts 1891, p. 57, §19) requiring of the masters, that as the miners advance in their work all loose coal, slate and rocks shall be carefully secured from falling.   pp. 254, 258.

7. SAME.—*Demurrer.—Inferences.*—A demurrer to a complaint admits the facts well pleaded together with all reasonable inferences therefrom.   p. 255.

8. SAME.—*Complaint.—Statutory Right.*—A complaint alleging, in substance, that defendant failed to comply with the provisions of a statute made for plaintiff's protection, is usually sufficient.   p. 255.

9. MASTER AND SERVANT.—*Assumed Risks.—Contributory Negligence.—Pleading.*—Assumption of risk and contributory negli-

gence, in cases of the violation of statutes prescribing certain duties for masters, are matters of defense. p. 255.

10. MASTER AND SERVANT.—*Coal Mines.*—*Inspection.*—*Contributory Negligence.*—A coal miner is not guilty of contributory negligence because of his failure to tap on the roof of his room to detect whether the overhanging coal and stone are loose, there being no obvious defect. p. 258.

11. SAME.—*Defective Ways and Works.*—*Notice.*—Masters are. charged with notice of defects discoverable by the exercise of ordinary care. p. 260.

12. EVIDENCE.—*Exclusion.*—*Harmless Error.*—It is not error to exclude evidence which has already been admitted, nor to exclude evidence which could not affect the result. p. 260.

From Sullivan Circuit Court; *Orion B. Harris,* Judge.

Action by William Rockey against the Antioch Coal Company. From a judgment for plaintiff, defendant appeals. (Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.) *Affirmed.*

*John S. Bays, Lee Fenton Bays* and *Fred Fenton Bays,* for appellant.

*William L. Slinkard* and *Theodore E. Slinkard,* for appellee.

JORDAN, J.—Appellee commenced this action in the Greene Circuit Court to recover from appellant for personal injuries sustained by him while at work in its coal mine. The venue was changed to the Sullivan Circuit Court. A demurrer to the complaint for insufficiency of facts was overruled. Answer, the general denial. Trial by jury. Verdict returned in favor of appellee, assessing his damages in the sum of $600. Motion by appellant for a new trial, assigning the statutory grounds and that the court erred in not requiring the plaintiff, William Rockey, upon his cross-examination, to answer the following questions propounded by appellant: (1) "Is not tapping the safest way to determine whether or not overhanging slate is loose and dangerous?" (2) "You are a practical coal miner, are you not?" The motion for a new trial was denied, to which appellant excepted. Thereupon the court rendered judgment upon the verdict.

The errors assigned for reversal are predicated, first, upon overruling the demurrer to the complaint; second, in denying the motion for a new trial.

The complaint is in one paragraph, and, among other facts, alleges that the defendant, on August 20, 1903, and prior thereto, was a corporation, duly organized under the laws of the State of Indiana, for the purpose of mining coal; that on said day, and for some time prior thereto, it was engaged in Greene county, Indiana, in mining coal by means of a shaft sunk from the surface of the earth to the bed of coal beneath, and by means of driving entries to the coal, from which entries rooms were turned; that the defendant had in its employ, engaged in mining coal in its said coal mine, more than ten men; that on August 20 plaintiff was in the employ of the defendant as a coal miner, engaged in its said mine in mining coal, in a room and entry therein. The pleading, after averring what was the duty of the defendant, under the law, in regard to furnishing the plaintiff, its servant, with a safe place in which to perform his work, and alleging other facts in respect to the duty of its mining boss to visit and examine the working places of the miners, including the room in which plaintiff was performing his duty, then alleges that the defendant company had wholly failed and neglected to discharge its duty in this respect. The complaint charges that said defendant negligently and carelessly failed, by and through its bank (mining) boss, to visit and examine said working place and room in which plaintiff worked at least once every alternate day while plaintiff was engaged at work therein, but, on the contrary, it is alleged that its said mining boss did not visit said working place while said plaintiff was at work more than once during a period of one week, all of which was well known to defendant; that, by reason of the defendant's failure, through its mining boss, to examine the working place where the plaintiff worked, the roof of said room was, by the defendant, negligently permitted to become weak and unsafe between the

props therein and the face of the coal, and the defendant negligently suffered said roof to become dangerous; that on said August 20, 1903, the roof of said room in which plaintiff was performing his work, which roof the defendant had negligently suffered and permitted to become dangerous, weak and unsafe, as aforesaid alleged, suddenly gave way and fell upon plaintiff, thereby crushing, maiming and injuring him, by reason of which injuries he has been damaged in the sum of $5,000, for which he demands judgment.

The only objection urged by appellant's counsel against the sufficiency of the complaint is that it discloses that the injury complained of did not occur at a working place in defendant's coal mine, where, under the law, it was compelled to use props to secure the roof thereof, or to see that its safety was assured, but they advance the argument that it appears from the complaint to have been a place wherein the conditions were constantly changing and where it was impossible to employ props, and that it must be considered and held to be a place which was furnished by the servant and not by the master.

The pleading in controversy cannot be approved as a model, and possibly may be said to be open to a motion to make more specific. The pleader, however, appears to have followed the complaint which was held to be sufficient on demurrer in the case of *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319. In the main, so far as the draftsman of the complaint in controversy appears to have deemed them applicable, the same averments are therein employed as were stated in the complaint in the latter case. Tested by the facts averred, it appears that appellee bases his right of action upon section thirteen of an act of the legislature passed in 1891 (Acts 1891, p. 57, §7473 Burns 1901). This provides a right of action against the owner, operator, agent or lessee of a coal mine for any direct injury to persons or property occasioned by any violation of the provisions of said act, or for any wilful failure to comply with its pro-

visions. We note and consider other provisions of this same statute pertinent to this case. Section 7479 Burns 1901, Acts 1891, p. 57, §19, makes it the duty of the owner, operator, agent or lessee of all coal mines to which said act applies, to employ a competent mining boss, who shall be an experienced coal miner. This section makes it the duty of such mining boss to ''keep a careful watch over the ventilating apparatus and the airways'' of the mine, and he is required to see, as the miners advance in their excavations, that all loose coal, slate and rock overhead are carefully secured against falling on the traveling and airways.

By §7472 Burns 1901, Acts 1897, p. 168, §4, it is made the imperative duty of the mining boss to ''visit and examine every working place in the mine, at least every alternate day while the miners of such place are, or should be at work, and he shall examine and see that each and every working place is properly secured by props and timber and that safety of the mine is assured. He shall see that a sufficient supply of props and timbers are always on hand at the miners' working places. He shall also see that all loose coal, slate and rock overhead, wherein miners have to travel to and from their work are carefully secured. Whenever such mining boss shall have an unsafe place reported to him, he shall order and direct that the same be placed in a safe condition; and until such is done no person shall enter such unsafe place except for the purpose of making it safe. Whenever any miner working in said mine shall learn of said unsafe place he shall at once notify the mining boss thereof and it shall be the duty of said mining boss to give him, properly filled out, an acknowledgment of such notice in the following form,'' etc.

A violation of the provisions of any section of the act in question, or any amendments thereto, is declared by §7483 Burns 1901, Acts 1897, p. 168, §3, to be a criminal

1. offense. An examination of the provisions of the several statutes of this State pertaining to coal miners

and their work in coal mines makes it evident that the principal purpose of the legislature in the enactment of these laws was to provide more fully and effectually than does the common law for the safety and protection of this class of laborers, by prescribing, as such statutes do, the particular means, methods and measures, either natural or artificial, to be employed, so far as practicable, by a person engaged in the operation of coal mines, in order that reasonably safe working places for the employes in such mines may be provided.   *Davis Coal Co.* v. *Polland, supra.*

The legislature having prescribed the particular means, measures and standards for securing the better protection of such employes, it becomes the duty of their employers 2. to comply with the provisions of the law, and the failure so to comply is, by the law, regarded as negligence *per se,* for which §7473, *supra,* in the absence of contributory negligence on the part of the injured person, awards a right of action for damages for a direct injury to person or property sustained thereby or resulting therefrom.   *Green* v. *American Car, etc., Co.* (1904), 163 Ind. 135; *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Davis Coal Co.* v. *Polland, supra; Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290.

Appellant, as the authorities affirm, was required to employ the measures prescribed by the statute for making and keeping the working place in its coal mine in a rea- 3. sonably safe condition.   Its duty was a continuing one, and the delegation thereof by appellant to another would not relieve it of liability from the results of the failure of the person so delegated to perform such duty. The mining boss which appellant employed, as required by the statute, was not, in the performance of his duties, under the law, the fellow servant of appellee, but was the representative of appellant.   *Schmalstieg* v. *Leavenworth Coal Co.* (1902), 65 Kan. 753, 70 Pac. 888, 59 L. R. A. 707; *Wellston Coal Co.* v. *Smith* (1901), 65 Ohio St. 70, 61 N. E. 143, 55

L. R. A. 99, 87 Am. St. 547; *Linton Coal, etc., Co.* v. *Persons* (1894), 11 Ind. App. 264; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664.

Negligence on his part in the discharge of these duties, in the eye of the law, must be imputed or attributed to appellant company, and it will be held responsible for the legitimate results of such negligence. *Rogers* v. *Leyden* (1891), 127 Ind. 50; *Schmalstieg* v. *Leavenworth Coal Co., supra; Wellston Coal Co.* v. *Smith, supra; Linton Coal, etc., Co.* v. *Persons, supra; Diamond Block Coal Co.* v. *Cuthbertson, supra.* In this latter case, in construing the provisions of the same statute here involved, we said: "Among others, it was the duty of the mine boss, under the statute, to see that all loose stone and slate in any of the rooms were taken down or propped by means of timbers before the men were permitted to enter therein to work with the machines, and also to see 'that a sufficient supply of props and timber are always on hand at the miners' working places.' "

As previously said, the complaint in question substantially follows the one in *Davis Coal Co.* v. *Polland, supra.* It charges the failure of appellant, through its mining boss, to perform a specific statutory duty—one which, under the law, it owed to appellee as its servant. The failure of its mining boss to visit and examine, as required by the statute, the working place in which appellee was engaged in mining coal for appellant is expressly shown. By its averments the complaint further discloses that by reason of the negligence in question the roof over the place in which appellee worked was permitted to become weak and unsafe, and that the accident by which he was injured was the direct or proximate result of appellant's negligence.

The complaint cannot be said to be open to the objections urged by counsel for appellant, as hereinbefore stated. Their argument that appellee is shown to have been engaged in furnishing for himself a place in which to perform his

work, and that in the furtherance of such work the place in question became dangerous, is not warranted or in any manner supported by the facts alleged. The cases cited, and referred to as ruling such questions, are not applicable.

It is further contended that if the mining boss had by inspection discovered the weak and unsafe condition of the roof in controversy he could not have avoided the accident, for the reason that the weakness or infirmity therein was between the props already in use and the face of the coal. Consequently it is argued that additional props and timber could not have been employed without preventing or interfering with the use of the machines. This is a mere assumption upon the part of counsel, as nothing of the kind can legitimately be inferred from the facts averred in the complaint. The mining boss, however, in his efforts to make reasonably safe the working places in the mine, is not confined to props or timbers as the only means to secure such safety. If, as insisted, it could be said, under the facts alleged, that it was impracticable to employ props, in addition to those already in use, further to support the roof, for the reason that they would prevent or interfere with the operation of the machines, then the mining boss should have caused the loose coal, slate or rock, if there was any overhead, to be taken down, and, until the place was made reasonably safe by such means, or others, he ought not to have permitted any of the employes to work in the place in question. In fact §7479, *supra,* provides that the mining boss shall see that "as the miners advance their excavations, all loose coal, slate and rock overhead are carefully secured against falling." Certainly, then, if for any reason it becomes impracticable to secure loose coal, slate or rocks overhead in the working place in the mine by means of timber or props, such loose coal, slate or rock should be removed before the miners are permitted to resume their work.

Appellant, by his demurrer to the complaint, conceded as true all the facts therein which were well pleaded, together

with all the reasonable inferences which might be de-
duced from such facts. When tested by this rule, it
is evident that appellee, by his complaint, has brought
himself within the class entitled to the benefit of the statute,
and has shown a positive violation thereof by appellant,
through its mining boss, and a resulting injury by
reason of such violation. As a general rule, in plead-
ing a right of action under the statute in question, a
substantial negation of a compliance with its provisions upon
which a plaintiff relies is all that is essential to be set forth
in the complaint to show a violation of the statute. Gener-
ally speaking, it is not necessary for the plaintiff to antici-
pate the question of assumed risk or contributory
negligence by averring an absence of knowledge on his
part of the defendant's negligence. These, if avail-
able or competent, are held to be matters of defense. *Dia-
mond Block Coal Co.* v. *Cuthbertson, supra; Davis Coal Co.*
v. *Polland, supra;* White, Per. Injuries in Mines, §355.

Under the holding in *Davis Coal Co.* v. *Polland, supra,* the
complaint in controversy is sufficient on demurrer.

Guided by the principles which we have hereinbefore an-
nounced, we pass to the consideration of the evidence which
counsel for appellant assail as insufficient to sustain the judg-
ment. We have carefully read the evidence as it appears in
the record, and are satisfied with its sufficiency to uphold the
judgment. Without going into details, but generally speak-
ing, it may be said that there is evidence going to establish,
among others, the following facts: Appellant is an incor-
porated company organized for the purpose of mining coal.
At, and for some time prior to, the time of the accident by
which appellee was injured, which occurred on August 20,
1903, between 6 and 7 o'clock p. m., it had in its
employ John Eddy as mining boss, and also had employed in
working about its mine about seventy men, including appel-
lee. The mine which appellant was operating at and before
the accident was situated about five miles west of Linton, in

Greene county, Indiana, near the line dividing Greene and Sullivan counties. There is evidence to show that appellee, at the time he sustained the injury, was forty years old, and a practical, experienced miner. On the day of the accident he and one Swaggerty were in the employ of appellant, engaged in operating a Morgan-Gardner cutting machine. For two weeks previous to said day they had been cutting with this machine, which weighed about 3,200 pounds. They had operated the machine in about twenty rooms on the west side of the mine, including rooms No. 1 and No. 2. The place in the coal mine in which appelle was at work when injured was known as room No. 2. He would alternate in his work from room No. 1 to room No. 2. Witnesses testified that the latter room was off the second south entry of the mine, west. There is evidence to show that for more than two weeks prior to said August 20, 1903, appellant's mining boss, John Eddy, had wholly failed and neglected to visit and inspect either of the rooms No. 1 or No. 2. It appears that on August 19 the cutting machine operated by appellee and Swaggerty became out of repair. It was placed in the hands of a repairer, and was made ready for use between 6 and 7 o'clock on the evening of the following day, when appellee and his said assistant resumed their work in room No. 2. The fact that the machine became out of repair was the reason they did not resume their work until August 20. On the latter day they went into room No. 2 for the purpose of going to work therein, and, as means of affording them light, each had a lighted lamp in his cap. They looked around the room and at the roof, using the lights in their caps for that purpose. In fact they appear to have exercised fully their senses of seeing and hearing in order to discover whether the room and its roof were in a safe condition for them to begin operating the machine. Upon such examination they discovered nothing to indicate that the room or its roof was in an

unsafe or dangerous condition. There is no evidence to show that the defects or unsafe conditions of the roof overhead were in any manner open or obvious. Neither appellee nor his assistant tapped or sounded the roof in order to ascertain in respect to its safety. After making the examination as shown, they began operating the machine, cutting the face of the coal. They had made some two or three cuts, when a large piece of slate, weighing about one thousand pounds, fell from the roof on the north side of the room between the props and the face of the coal. This slate fell upon appellee and seriously injured him. He was pressed down upon the floor of the room by the slate for a considerable length of time before men could reach him to give assistance. There is evidence going to show that he and his helper were followed by men who did the blasting of the coal after he and his assistant had quit their work. In fact, it appears that the blasting is never done in the mine while the miners are at work therein, but is always performed after the work of the miners for the day is over. There is also evidence tending to show that if appellant's mining boss had, in obedience to the statute, made the inspection as exacted, he would have discovered that the slate which fell and injured appellee was loose and liable to fall. It appears that had the condition of the roof been tested by means of tapping or sounding, the unsafe condition thereof would have been discovered. The injury which appellee sustained consisted of a broken pelvis, a bruised spine, and lacerated flesh on his legs and other parts of his body. He is shown to have suffered much pain, and was unconscious the greater portion of the time during a period of nine days following the accident. He was taken to a hospital in Terre Haute, where an operation was performed, and he was placed in a plaster cast.

Counsel in the main renew and urge, as against the sufficiency of the evidence, the same argument which they ad-

vanced in respect to the sufficiency of the complaint. They insist that, at the time appellee was injured, he was guilty of contributory negligence, for the reason that he did not exercise the care required for his own protection. The claim is made that it was incumbent upon him to test the safety of the roof by tapping upon it. This method, they assert, is the only one by which it can be determined whether overhanging slate or rock is loose and liable to fall. It is contended that his failure to make this test must be held to be negligence on his part. This contention has no legal merit, and cannot be sustained. *Island Coal Co.* v. *Risher* (1895), 13 Ind. App. 98; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290.

As previously said, there is no evidence in the case to prove that the unsafe condition of the roof was open and obvious to view, and, in the absence of this fact it cannot be asserted that appellee was required to make an inspection of the roof by the method claimed in order to ascertain in regard to its safety. In *Diamond Block Coal Co.* v. *Cuthbertson, supra,* we said: "The law exacts of the servant the use of his faculties and senses in ascertaining whether danger actually exists, where the same is obvious or open to view; but, in the absence of apparent or known defects or perils in the place where he works, he is not bound to make an inspection thereof, or search therein in order to discover whether such place is safe or unsafe. *Baltimore, etc., R. Co.* v. *Roberts* [1903], 161 Ind. 1; *Rogers* v. *Leyden* [1891], 127 Ind. 50; *Island Coal Co.* v. *Risher* [1895], 13 Ind. App. 98."

It is further argued that appellee must be held to have assumed the risk or danger incident to his working place, because its character or condition for safety was constantly changing as the work of mining progressed. We believe we have fully met this argument in what was said in considering the sufficiency of the complaint. It is true that appellee and his assistant were engaged in ad-

vancing the excavations in the room where he was injured, but, to repeat what we have hereinbefore affirmed, as the work of these miners progressed it became the duty of the mining boss, under the provisions of the statute, to see that all "loose coal, slate or rock overhead," if any, in the room in question was carefully secured, and if, for any reason, such security could not be had, then it was his duty to see that such loose coal, slate or rock was removed before the miners were permitted to resume their work in said room. The statute does not contemplate that an operator of a coal mine shall become an insurer of his employes working

2. therein, but his omission to comply with the provisions of the statute is negligence *per se*. The safety of the miners working in a coal mine, to a great extent, depends upon the vigilance of the mining boss in the proper discharge of his duties. Of course a coal miner who is engaged in making an unsafe or dangerous place secure is, as a general rule, required to look out for his own safety. Appellee, however, was not so engaged. He was not, as counsel seemingly insist, engaged as a jerryman in cleaning up and making room No. 2 safe. Neither does it appear that the slate which fell from overhead and injured him was of a recently excavated portion of the room in question. Therefore, the authorities cited by counsel upon the last-above enumerated points or propositions are, under the facts, not applicable.

It appears that the blasting done by the men who followed appellee and Swaggerty, as the work of the latter in excavating progressed, was a daily occurrence, and possibly served, to an extent at least, to render loose and unsafe the slate or rock overhead in the room where these miners worked. Under the circumstances, therefore, it was very essential that appellant, through its mining boss, should exercise the care exacted by the statute. White, Per. Injuries in Mines, §§400, 412.

It cannot be presumed that the mining boss, an experi-

enced coal miner, as the law exacted, was ignorant of the daily occurrence of this blasting and the tendency of these powder blasts to loosen slate or stone overhead in the rooms where the miners worked. Such knowledge the law would impute to him, and through him to appellant. The authorities affirm that masters are chargeable with notice, not only of what they actually know, but also of what they ought to have known; or, in other words, whatever facts they could have known had they exercised ordinary care and diligence in the performance of their duties. 1 Shearman & Redfield, Negligence (4th ed.), §206.

Counsel next complain of the action of the court in not requiring appellee, on cross-examination, to answer the two questions hereinbefore set out. Passing the point made by appellee's counsel in regard to their form, we are satisfied that appellant was not harmed by this ruling of the court, for the reason that the testimony which appellant sought to elicit by the questions was fully given by appelle in response to other interrogatories propounded to him by appellant. Again, upon another view, appellant's case would not have been improved or strengthened had appellee answered the first of these questions in the affirmative, because, as we have herein held, it was not incumbent upon him to resort to the method of tapping or sounding the roof in order to discover whether it was safe.

Finding no available error, the judgment is affirmed.